IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES GROTTE individually and on behalf of all those similarly situated, | Case No.   1:24-cv-6892 |
| Plaintiff, | |
| v. | |
| TRANSFORM SR, LLC and TRANSFORM SR BRANDS MANAGEMENT, LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

1.      Plaintiff brings this class action against Transform SR, LLC and Transform SR Brands Management, LLC on behalf of consumers who purchased a Class Refrigerator—any Kenmore-branded refrigerators that contained a common defective component called a "linear compressor" that was sold in the United States within 10 years.

2.      A compressor is often referred to as the "heart" of a refrigerator because its function is to circulate refrigerant throughout the system. A refrigerator cannot work without a functioning compressor, although a well-maintained, properly functioning refrigerator compressor should function for at least 10 years. Indeed, upon information and belief, many of the Class Refrigerators—including Plaintiff's—came with an express Sears warranty that the compressors would function for 10 years.

3.      Defendant Transform SR, LLC ("Transform SR") operates Sears, Roebuck & Co. ("Sears"), both Sears' physical stores and its website (https://www.sears.com/). Transform SR and its predecessor distributed, marketed, advertised, and sold the Class Refrigerators.

4.      Defendant Transform SR Brands Management, LLC ("Transform SR Brands") warrants and services Kenmore-branded products, including the Class Refrigerators. Transform

SR Brands' holding company—Transform Holdco LLC—took express assignment and assumed all liabilities arising from warranties for Class Refrigerators sold by its corporate predecessor before February 11, 2019.

5.      Transform SR and Transform SR Brands (together, "Defendants" or "Transformco"), as well as their predecessors, have been aware of the linear compressor defect in the Class Refrigerators for several years. Defendants and their predecessors learned of this defect through reported failures by consumers, a large volume of warranty claims, and several lawsuits.

6.      Despite their knowledge of the linear compressor defect and its propensity to cause the Class Refrigerators to fail relatively shortly after purchase, Transformco took no steps to disclose the defect to consumers and instead continued to misleadingly advertise the Class Refrigerators as reliable products.

7.      The Class Refrigerators pose unreasonable risks of property damage and personal injury via food-borne illnesses during normal use.

8.      Plaintiff seeks money damages. A refrigerator that fails to keep food at a safe temperature has no value because it cannot be used safely. In the alternative, the Class Refrigerators have significantly less value than promised at the point of sale (i.e., a refrigerator that is prone to storing food at an improper temperature is less valuable than one that can store food at a safe temperature).

9.      The below allegations are based upon personal knowledge as to Plaintiff's own conduct and are made on information and belief as to the acts of others.

<u>**THE PARTIES**</u>

**I.      <u>JAMES GROTTE</u>**

10.     Plaintiff James Grotte is a resident of Sugar Land, Texas.

11.     Plaintiff Grotte purchased his Class Refrigerator (Model Number: 795.73167.610) in mid- to late-2019 from a Sears store in Texas.

## II.     Transform SR, LLC

12.     Defendant Transform SR, LLC ("Transform SR") is an Illinois corporation headquartered in Hoffman Estates, IL.

13.     Transform SR operates Sears, Roebuck & Co. ("Sears"), both Sears' physical stores and its website (https://www.sears.com/).

14.     Through Sears and Kenmore, Transform SR markets, advertises, distributes, and sells the Class Refrigerators in and from this jurisdiction.

15.     Transform SR is and has at all relevant times been in the business of marketing, advertising, distributing, and selling the Class Refrigerators described herein throughout the United States and in this jurisdiction. Transform SR purposely directs its conduct toward this District and engages in a continuous course of business in this District, including by selling thousands of refrigerators and other consumer goods in this District every year.

## III.     Transform SR Brands Management, LLC

16.     Defendant Transform SR Brands Management, LLC ("Transform SR Brands") is an Illinois corporation headquartered in Hoffman Estates, IL.

17.     Transform SR Brands warrants and services Kenmore-branded products, including Kenmore refrigerators.

18.     Through Sears and Kenmore, Transform SR Brands warrants and services the Class Refrigerators in and from this jurisdiction.

19.     Transform SR Brands is and has at all relevant times been in the business of warranting and servicing the Class Refrigerators described herein throughout the United States and in this jurisdiction. Transform SR Brands purposely directs its conduct toward this District

and engages in a continuous course of business in this District, including by warranting and servicing thousands of refrigerators and other consumer goods in this District every year.

20.     On February 11, 2019, Transform SR Brands' parent company purchased the assets of Sears Holding Corporation. Under this asset purchase agreement, Transform SR Brands' parent company—Transform Holdco LLC—assumed all liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to February 11, 2019. Since February 11, 2019, Transform or its corporate affiliates also sold the Class Refrigerators. Upon information and belief, Transform SR Brands is the subsidiary that then assumed warranty and servicing liabilities relating to the Class Refrigerators.

## JURISDICTION AND VENUE

21.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Proposed Class is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Proposed Class consists of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

22.     The United States District Court for the Northern District of Illinois has jurisdiction over Defendants because they reside and transact business in Illinois, have purposely availed themselves of the laws of Illinois, and because many of the specific events giving rise to this action occurred in Illinois.

23.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiff's and the Class's claims occurred in this District. Defendants have marketed, advertised, and sold the Class Refrigerators, and otherwise

conducted extensive business, within this District. In addition, Defendants' principal place of business is in Illinois.

24.     Venue is further proper in this District because this case is related to a factually and legally similar class action pending in this District, *Cristofoletti, et al. v. Transform SR, LLC, et al.*, No. 23-cv-1318-JFK-HKM (N.D. Ill.) (the "*Cristofoletti* Action").

## GENERAL FACTUAL ALLEGATIONS

25.     A crucial component of any modern American household, refrigerators are found in the vast majority of homes. By cooling food and medicines, like insulin, to safe temperatures, refrigerators reduce the risk of illness.

26.     According to most manufacturers, properly functioning refrigerators should have an average lifespan of 10 years.[1]

## I.     THE CLASS REFRIGERATORS CONTAIN A DEFECTIVE LINEAR COMPRESSOR

27.     Every refrigerator has a compressor. It is a critical component to the operation of a refrigerator because it moves or pumps refrigerant—a cooling substance that changes from liquid to gas—through the refrigerator's system. The refrigerator's temperature sensors trigger the compressor to start and stop the cooling process. Once the temperature rises above a set level, the compressor starts by drawing cold refrigerant gas from the refrigerator's evaporator. The refrigerant enters the compressor through an intake valve and the compressor then puts pressure on the refrigerant gas (compressing it), which raises the refrigerant's temperature and pushes the gas through its discharge valve, then through the coils on the outside of the refrigerator. When the hot gas in the coils meets the cooler air temperature in the room, it becomes a liquid. The

---

[1] Daniel Wroclawski, *How to Make Your Refrigerator Last Longer*, Consumer Reports, (June 20, 2019), https://www.consumerreports.org/refrigerators/how-to-make-your-refrigerator-last-longer-a3675077642/.

refrigerant then passes through an expansion valve, which decreases its pressure, and continues to flow through the coils inside the freezer and the refrigerator. As the cold liquid refrigerant moves through the coils, it cools the air in the refrigerator by absorbing the heat from the surrounding air. The refrigerant then evaporates into gas, flows back into the compressor, and the process repeats.

28.     The defective linear compressors at issue in this lawsuit were designed and made by non-party LG Electronics. LG Electronics first introduced its proprietary linear compressor technology in 2001. A linear compressor is distinct from other compressors because the piston used to compress gas moves along a linear track. LG's linear compressors are defective because they often fail well before the industry standard (and typical warranty period) of 10 years of normal usage.

29.     Although discovery will confirm all the root causes of the defect in LG's linear compressors, two component parts of the linear compressor appear to contribute to its routine failure before 10 years. First, the tubing of the compressor's evaporator is prone to corrosion and pitting from ordinary usage, whereby pinholes develop in the tubing. The pinholes cause leakage and allow refrigerant to enter the tubing, which causes the refrigerant to generate excess pressure as it flows from the evaporator to the condenser. The excess pressure puts additional stress on the compressor, which causes the compressor to fail. Second, the defective compressors also have a discharge valve (the valve that regulates the flow of the refrigerant from the compressor) that is weak and prone to failure from ordinary usage.

30.     When the defective linear compressor fails, the Class Refrigerators stop cooling and run above the temperature required to store food and other consumable goods safely. This

causes food stored in the Class Refrigerators to spoil, posing a safety risk to consumers who might become ill from ingesting spoiled goods.

31.     LG Electronics and its US subsidiary distribute a replacement compressor for the Class Refrigerators. Those replacements routinely fail before the industry standard of 10 years.

32.     The defective linear compressor is found in all Class Refrigerators. Based on publicly available information regarding the defective linear compressors, at least the following Kenmore refrigerator models appear to have the defective linear compressor: 72372, 72373, 72379, 72482, 72483, 72489, 73055, 73105, 73167, 74012, 74012, 74013, 74013, 74015, 74019, 74022, 74023, 74023, 74024, 74025, 74029, 74032, 74033, 74039, 74042, 74043, 74049, 74053, 74063, 75049, 79983, and 79993. Plaintiff purchased one of these model number Class Refrigerators from Defendants. Upon information and belief, there are many other Kenmore refrigerator models with the defective linear compressor. Discovery from Transformco will identify the complete universe of these models.

33.     The Class Refrigerators range in price from approximately $2,000 to $3,700.

34.     The Class Refrigerators come with a one-year express manufacturer's warranty for the unit. Upon information and belief, many of the Class Refrigerators also come with a ten-year express manufacturer's warranty for the linear compressor.

## II.     TRANSFORMCO OMITTED INFORMATION ABOUT THE CLASS REFRIGERATORS' DEFECT

### A.     Transformco's Knowledge of the Defect

35.     For several years, Transformco and its agents and predecessor have known that the Class Refrigerators were defective as a result of the defective linear compressors, which caused the Class Refrigerators to stop cooling properly and run above the temperature required to store food safely.

36.     Transformco and its predecessor learned of the linear compressor defect through, among other things, several lawsuits about it. For example, several consumers brought a putative class action concerning refrigerators with the linear compressor defect in *Bentley v. LG Electronics U.S.A., Inc.*, D.N.J. No. 2:19-cv-13554-MCA-MAH. LG USA and *Sosenko v. LG Elecs. U.S.A., Inc.*, C.D. Cal. No. 8:19-cv-610-JLS-ADS. Several of the consumer plaintiffs in these cases had bought Kenmore refrigerators. When the cases were consolidated and settled, however, the settlement class was defined to exclude all Kenmore refrigerators.

37.     Moreover, well prior to the filing of these lawsuits, employees of Sears' warranty department received complaints from U.S. customers and assigned authorized technicians to visit the residences of complaining consumers and analyze the Class Refrigerators and other refrigerators with the defective linear compressor. Upon information and belief, these authorized technicians have been reporting large volumes of Class Refrigerator failures caused by the linear compressor defect.

38.     Hundreds of publicly available accounts of Class Refrigerator failures caused by the linear compressor defect further notified Transformco of the defect in the Class Refrigerators. Upon information and belief, Transformco and its predecessor were aware of these public complaints, including through employees of its corporate predecessor that continued work for Transformco after the February 2019 asset purchase.

a.     A September 25, 2017 consumer complaint states: "Kenmore Elite model# 795.74025.411[.] My fridge is less than two years old and just stopped working. The service tech came out and didn't even look at it and said right away that the compressor is bad. I asked how did he know that and he said they are being replaced in the unit an alarming rate. Now they cannot locate a compressor to repair the fridge. I've lost total

confidence in this model refrigerator and not sure what to do, this was an expensive item and I think Sears needs to replace them with a different model that is not experiencing these problems."

b.      A September 29, 2017 consumer complaint states: "Sears Kenmore elite fridge by LG[.] Bought new fridge model 795 74029 , less that 2 years old , sears repair comes out and says , compressor is bad a debris is plugging the pencil lead thin lines. He can't blow it out and says fridge is not fixable. So I spent 200 dollars a month keeping my lettuce cold. He said buy Whirlpool. 531.00 minimum to try and fix it up to 1000.00. And only 99 day guarantee! It cost me 100.00 to find this out. Can you say rip off! After 4 hours of calls to LG and Sears no help. I would be interested in hearing about any class action suits, it appears one is justified."

c.      A November 1, 2017 consumer complaint states: "Kenmore Elite Refrigerator – NIGHTMARE[.] I purchased a Kenmore Elite Refrigerator Model 74023 (with LG compressor) in June 2015. Fast forward two years later, October 17, 2017 found the food in my fridge was warm and my all freezer food was defrosted. All of the horror stories on this site are true. Most have happened to me in the last few weeks. Multiple calls to Kenmore and Sears; multiple technicians have come out; parts on backorder with no ETA; have taken multiple days off of work to wait around for the technicians to show up; telling Sears you don't want to purchase any other service plan they try to sell you every time you call them because they are desperate to make money. I'm being told that to next available day for a technician to come out is Nov. 14th - yet the parts have not arrived and they cannot tell me when the parts will be available. Neither Sears nor Kenmore care about their customers!!! I purchased four Kenmore

appliances from Sears at the same time when we remodeled our kitchen in 2015. This is not what I expected from Kenmore or Sears. Do not purchase a Kenmore, especially from Sears. I wish some someone (a smart lawyer, the state attorney general, Superman) did something about this - and at least get Sears or Kenmore to reimburse customers for multiple bags of ice purchased a week to keep the little amount of food you can in a small ice chest, all the "going-out to eat" money that has been spent because we cannot provide a meal for our families; and all the days off of work we have had to take. SOMEONE HELP US!!"

   d.  A February 20, 2018 consumer complaint states: "Kenmore Elite Refrigerator[.] Worst refrigerator ever!! Thought I was buying a real honest to goodness Kenmore product. Good old reliable Sears. That's a joke. It's an LG product with a Kenmore sticker on it. Purchased in 2015. Have had nothing but problems. Had a technician out at least 6 times for various problems. Warranty expires this June 2018. Wasn't cooling very well on this service call. Technician checks it out today, 2/19/18. Needs a new compressor, electrical board and filter dryer. Might be a month before I get the parts. Thank goodness I called before the warranty expired. Guess next time something fails my warranty will be expired and I'll just take it to the garbage dump. Decided to Google on this refrigerator and read lots of reviews, just today, on how many consumers have had problems with the Kenmore Elite compressor going bad and other multiple problems. As a matter of fact, the technician was going to his next call with the same exact model refrigerator I have and the same cooling problem. Technician stated he had replaced a lot of compressors in these refrigerators. LG needs to ante up and be responsible for all repairs and labor for their defective compressors, regardless of

warranty or not. I will never make another purchase without checking out what consumers have to say about a product. Oh, and by the way, I think Consumer Reports gave this refrigerator high ratings back when I purchased it, as I am a subscriber to their magazine. Well, not good enough. Let one of them actually purchase one and put it in their house and lets see what happens in a month, 6 months or 1 year and see how they feel about the refrigerator then!!! Just wish me luck that it will last a while longer after repairs. And maybe I'll have enough time to save up money to purchase something else."

e.      A July 16, 2018 consumer complaint states: "Sears Kenmore Elite Refrigator[.] I purchased a Kenmore Elite refrigerator in November of 2015. The compressor went out in October of 2017. We were left with over $300 worth of spoiled food that we were never compensated for, even though the extended warranty claims to cover lost food. It is now July 2018 and the refrigerator has gone out again! It's been 9 days since we called to put in a claim to have the refrigerator repaired and they have not sent out a tech who can diagnose the issue. We are now dealing with another refrigerator full of spoiled food! In talking with the tech who came in 2017, he said that the Kenmore Elite refrigerators have had many issues with the compressors failing and that Kenmore and LG are aware of it! I've never paid as much for a refrigerator as I did for this one and I've never had any issues with any other refrigerator that I have ever owned but this one! THIS THING IS A LEMON! Kenmore/LG are aware of it and they need to replace these units!"

f.      A December 19, 2018 consumer complaint states: "I bought a new Kenmore fridge April 2015 that cost approx. $1600 (before tax), and in December 2018 it stopped working with no warning. I noticed freezer began to defrost and the fridge was

not cooling. I called Sears repair and it took them 2 weeks to come out. They came today and the tech said it was the compressor and that it will be $980 to fix and there is really only a 70% chance that it will be fixed... It will never be the same and probably not worth fixing. Needless to say I am so upset, we lost all our food. It's only been 3 years since I bought Kenmore fridge, I shouldn't be having this problem AT ALL!!! It shouldn't cost me anything."

   g. An April 16, 2019 consumer complaint states: "We purchased a Kenmore Elite Grab and Go refrigerator from Sears in April of 2015. Last week our ice maker stopped working, and then a few days later the frig and freezer both stopped working. We contacted sears and was told that our warranty had expired. Sears scheduled a repair man to come out the following week, and offered us a warranty plan stating that we could pay $49 a month, with a $99 deductible, with parts covered and labor for up to $500. We accepted the plan. Even then because Sears does not do repairs on the weekend, therefore we had to spend $160 on a small freezer to salvage as much of our frozen food as possible. The following Monday we waited for the repair man for most of the day. Our appointment time was between 1pm and 5pm. The Sears repair man did not show up until around 6pm. He then informed us that our compressor was bad and that it would take a week for the repair work to be done. He then told us that we were expected to pay $99 for the visit, plus $146 dollars because the repair job exceeded the $500 limit. This information was slightly different from what we had been told by the person who sold us the warranty plan. When we called back a different representative told us that Sears only covers up to $500 for the total repair job. When I complained about the misinformation the warranty person on the phone offered me $500 towards the purchase of a new

refrigerator from Sears. Is he kidding. Our frig is only 4 years old! To add insult to injury, the repair person told us 'Your compressor is an LG compressor and these things are dropping like flies'. When I questioned him about the brand of the replacement part, he informed us that he would be replacing the compressor with another LG compressor. I have been on the phone with Sears several times the past few days complaining about my refrigerator not working. Twice the warranty person on the phone attempted to schedule a walk through to sell us a new AC unit. Yet its been a week and our refrigerator still does not work. In addition to a small freezer we had to go out last night to purchase a small refrigerator. I called the corporate office this morning and was sent back to the same customer service number. Its frustrating because the English of the people we spoke with is not very good. The agents sound very rehearsed and appear to experts at not solving your problems."

h.      A December 13, 2019 consumer complaint states: "I purchased the Kenmore Elite refrigerator hoping that it was as durable as the one I had in the past. I was wrong and sadly disappointed in this product. The compressor went out in less than 2 years and the replacement cost is ridiculous. The compressor is still under warranty but the cost to have Sears repair it is absurd. They no longer honor their products and charge the consumer an exorbitant fee for the service call and then charge labor fees for repairing their defective appliance. Sears was at one time selling a product that was well worth purchasing but that is no longer true. Buyers beware! Research your appliances and do not buy from Sears or you may be in the same position I am in now. I lost approximately $200.00 in food and I am stuck with the service fees as well. Never again will I shop at Sears!!"

3073512.1

i.      A December 31, 2019 consumer complaint states: "Kenmore Elite Refrigerator Made by LG[.] Bought a Kenmore Elite Refrigerator approximately 2 years ago, Model: 795.74025.411. Paid over $3,000.00 for the refrigerator and now 2 years later the compressor is going bad. Repairman said this was a common problem with LG refrigerators and Kenmore Refrigerators made by LG. Estimated repair cost over $1,000.00!"

j.      A June 5, 2020 consumer complaint states: "Just like all the stories before, we have a Kenmore Elite (made by LG) model 795.51863.611, purchase in 5/2018 and now the compressor is bad. I had a repair man out and I he said that even though the part will be covered (10 yr part warranty) the labor will not be and on average will be around $750. How is it justifiable to pay that amount of $$ for a 2 year old refrigerator but the other option is to trash it, so sad and pathetic. I will never buy anything from Sears ever again and I will be sure to tell anyone who listens what a piece of garbage the appliances are and how horrible Sears customer service is, they have been no help! This isn't right and I hoping they get sued big time."

k.      An October 8, 2020 consumer complaint states: "I purchased a brand new Kenmore refrigerator 8/2018 and the compressor blew 9/27/2020. I called to set an appointment date for service and they failed to show. My appointments are now continuing to be rescheduled later and later in the month. This has changed every other day via text or automated calls from 10/6, to 10/7 to 10/19, to now 10/20! I have received no explanation as to why my appointments keep getting changed and no acknowledgment regarding a service request for a refrigerator which is an ESSENTIAL household item."

-14-

l.      A November 14, 2021 consumer complaint states: "We purchased a Kenmore Elite refrigerator and it stopped cooling and we called Sears/Kenmore and they sent multiple people on 4 different occasions to check it out and all said that it was the compressor and we still have warranty on it. To add insult to injury one of their affiliates by name Intelfix paid $100 deductible to them and still they have not fixed my appliance nor replace and whenever we call they will give us a run around. I can't believe we have all of our appliances from the scam of a company called Sears/Kenmore."

m.      A September 26, 2022 consumer complaint states: "We bought our LG refrigerator with linear compressor on September 5, 2017 and bought a 5 year protection plan from Home depot. The fridge is no longer cooling as of September 13, 2022. I called LG and they referred me to home depot and home depot says there's nothing they can do since my warranty has expired. Do any of you out there have a similar issue with LG compressors going bad after only 5 years? I have an old Maytag refrigerator that I am using as a spare in the back yard that is almost 17 years old. I will never buy an LG/Samsung appliances again. Or from home depot for that matter."

39.     Transformco would also have known about the high rate of failures in the Class Refrigerators and their linear compressors because it received warranty claims from many affected consumers. Moreover, when Transformco closed on the asset purchase agreement it would have had access to the records of past warranty claims on its corporate predecessor.

### 2.      Transformco's Concealment of the Defect

40.     Despite knowing about the linear compressor defect, Transformco continued advertising, warranting, distributing, and selling the defective linear compressor and many of the Class Refrigerators without (a) warning consumers of the real possibility that the Class Refrigerators may be unable to store food at a safe temperature; (b) recalling the defective Class

-15-

Refrigerators; (c) offering to repair the defective Class Refrigerators free of charge; and/or (d) refunding consumers any or all of the purchase price they paid for their Class Refrigerators.

41.     When Plaintiff purchased his Class Refrigerators, Transformco failed to disclose to him that his Class Refrigerator contained a defective linear compressor that would likely fail well before the industry standard of at least 10 years, thereby causing his Class Refrigerator to run above the temperature required to safely store food and medicine.

42.     Transformco had a duty to disclose the above-described defect to Plaintiff and the Proposed Class Members, but failed to do so.

43.     Transformco's duty to disclose arose for several independent reasons. First, Transformco had superior knowledge of the defect for the reasons described above.

44.     Second, the linear compressor defect poses a material safety risk that always requires disclosure, because it threatens to deprive consumers of necessary food and increases the risk that consumers will ingest spoiled or otherwise unsafe food, which can cause illness.

45.     Third, Transformco's practice of disseminating misleading half-truths about the linear compressor and Class Refrigerators triggered a duty to disclose. Some representative examples of these misleading half-truths are collected in the subparagraphs below.

    a.     "Kenmore Elite 74022 French Door Bottom-Freezer Fridge—Keep Food Fresh and Accessible."

    b.     "From bags of fresh groceries to tons of Thanksgiving leftovers, the Kenmore Elite 74022 29.8 cu. ft. French Door Fridge has the flexible and spacious capacity you need. Take advantage of the full-width pantry drawer to keep snacks, treats or party trays chilled and ready to eat."

-16-

c. "Fresher Food Longer GeniusCool technology uses Digital Temperature Control, Multi Air Flow and electronic sensors to keep all of your foods fresh. The linear compressor adjusts to quick temperature changes and a CleanFlow Air filter circulate air through a charcoal filter to eliminate odors and help maintain freshness."

46. These exemplar statements about Class Refrigerators by Transformco are misleading half-truths because they misleadingly suggest that the Class Refrigerators and linear compressors are capable of properly cooling food. In truth, the Class Refrigerators and linear compressors routinely fail and stop cooling food properly well before the industry standard lifetime of 10 years. By affirmatively stating that the Class Refrigerators were capable of properly cooling food, Transformco triggered a duty to disclose the full truth about the linear compressor defect.

47. Despite these duties to disclose, neither Transformco nor its predecessor disclosed to Plaintiff or other Proposed Class Members at the point of sale when they purchased their respective Class Refrigerators. Nor have they disclosed the defect to Plaintiff or Proposed Class Members since the time of purchase.

**B.** **Warranties**

**1.** **A merchantable refrigerator compressor has a lifetime of 10 years**

48. Transformco and its predecessor are companies that deal in refrigerators and compressors, and are therefore merchants within the meaning of the Uniform Commercial Code.

49. Transformco and its predecessor marketed and advertised that the Class Refrigerators were of merchantable quality and fit for their intended purpose.

50. Because the industry standard lifetime of refrigerators is at least 10 years, a refrigerator is not fit for its ordinary use if it has a compressor that routinely fails well before the ten-year mark. The ten-year duration of Transformco's warranty for its linear compressors

-17-

confirms this industry standard. The implied warranty of merchantability therefore required the Class Refrigerators to meet this industry standard of ordinary use.

### 2.   Boilerplate in user manuals does not limit the implied warranty of mercantibility to less than 10 years.

51.     For several years, Transformco and its corporate predecessor have had a deceptive and unfair practice of not disclosing at the point of sale a set of written disclaimers, limitations, and exclusions to consumers that Transformco claims will limit its warranty obligation liabilities. Instead, Transformco and its corporate predecessor bury these purported limitations in a lengthy "use and care" manual that comes when the refrigerator is delivered, well after the purchase has occurred. The cover page of the manual does not state that any contractual terms are contained inside, and the vast majority of the information in the manual does not relate to contractual terms at all. Instead, the manual largely concerns technical information about the refrigerators. Consumers are therefore not given reasonable notice of the purported written disclaimers, limitations, and exclusions of Transformco's warranty obligations.

52.     The written disclaimers, limitations, and exclusions contained in Transformco's "use and care" manuals for the Class Refrigerators are not enforceable for several independent reasons.

a.      First, they are not part of the agreement formed at the point of purchase, and are not reasonably presented to the consumer for acceptance. The page in the "use and care" manual with the relevant language – if seen by consumers at all – provides no instructions on how a consumer can opt out of or negotiate the warranties, and the refrigerator will typically have been installed by the time the consumer has a reasonable opportunity to read the manual. For these reasons, Transformco never actually reaches an agreement with consumers concerning its purported warranty limitations.

-18-

b.      Independent of this failing, any effort to limit the duration of implied warranties for the Class Refrigerators to one year in duration is separately unenforceable because that lifetime is not a "reasonable duration" for a refrigerator under 15 U.S.C. §2308(b), given the industry standard of at least a ten-year lifetime for refrigerators and compressors.

c.      Furthermore, any effort to limit the duration of implied warranties for the Class Refrigerators to one year in duration is separately unenforceable because Transformco did not prominently display that limitation as required by 15 U.S.C. §2308(b) and instead buried its warranty limitations in a manual provided after the point of sale.

d.      Moreover, under federal law, any manufacturer or seller making a product available to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty. Accordingly, such implied warranties apply to Class Refrigerators sold to Plaintiff and all Proposed Class Members. Any language limiting implied warranties to a duration that is shorter than the longest of either the express warranty applicable to the linear compressor or the express warranty applicable to the Class Refrigerator is unenforceable under 15 U.S.C. §2308(b).

e.      Finally, any effort to limit the duration of, or remedies under, implied warranties for the Class Refrigerators is unenforceable because it is unconscionable for Transformco to seek to impose such limitations when it knew the defective linear compressors in Class Refrigerators routinely fail well before the industry standard of 10 years and because, as explained above, the purported warranty limitations were buried in

-19-

a user manual separate from the other important contract terms that were shown to the consumer at the point of sale. Contract terms shown to consumers at the point of sale include terms like the purchase price and delivery date.

### III.    PLAINTIFF GROTTE'S CLASS REFRIGERATOR

53.     Plaintiff Grotte purchased his Class Refrigerator (Model Number: 795.73167.610) in mid- to late-2019 from a Sears store in Texas.

54.     The "use and care" manual provided to Plaintiff Grotte with his Class Refrigerator includes a one year express warranty for the Class Refrigerator and a 10 year warranty for the linear compressor.

55.     None of the information presented by Transformco or its sales representatives to Mr. Grotte at the point of sale disclosed that the linear compressor in his Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Mr. Grotte to identify the defect himself.

56.     Mr. Grotte used the Class Refrigerator solely for its intended purpose as a personal home appliance.

57.     In or around April 2024, the linear compressor in Plaintiff Grotte's refrigerator failed.

58.     Plaintiff Grotte attempted to arrange for a Transformco-authorized technician to inspect the refrigerator shortly thereafter but Transformco informed him that there were no authorized repair technicians available in his area. Plaintiff Grotte thereafter retained an independent technician who found that the linear compressor had failed. The technician replaced the linear compressor on April 13, 2024, charging Mr. Grotte $1100 plus a $50 service call fee. Transformco did not compensate Mr. Grotte for that cost.

-20-

59.     During the period when Mr. Grotte's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, he was unable to use his Class Refrigerator for its intended purpose.

## IV.     INJURIES AND RISK OF IMMINENT HARM TO PLAINTIFF

60.     Plaintiff and the other Proposed Class Members purchased their Class Refrigerators solely for their personal, residential purposes and only used the Class Refrigerators as intended.

61.     The Class Refrigerators are defective because they contain defective linear compressors, which fail and cause the Class Refrigerator to run above the temperature required to store food and other consumable goods safely.

62.     In light of this defect, Plaintiff and other Proposed Class Members paid far more than the reasonable value of the Class Refrigerators, and would not have paid such had the defect described above been disclosed by Transformco.

63.     Plaintiff and other Proposed Class Members also lost valuable food as a result of the premature failure of their Class Refrigerators.

64.     Transformco has profited and continues to profit from the sale of defective Class Refrigerators by failing to disclose the above described defect and continuing to sell and distribute the Class Refrigerators at prices well above their reasonable value.

65.     As a direct and proximate result of Transformco and its predecessor's false warranties, misrepresentations, and failure to disclose the defect inherent in these Class Refrigerators, Plaintiff and the Proposed Class have purchased the Class Refrigerators and have suffered injury as a result.

66.     As a direct and proximate result of Transformco's concealment of the defect, its failure to warn its customers of the defect and the safety risks posed by the Class Refrigerators,

3073512.1

and its failure to remove the defective Class Refrigerators from consumers' homes or otherwise remedy the defect, Plaintiff and Proposed Class Members purchased the defective and unsafe Class Refrigerators and in many cases use them in their homes to this day.

67.     Had Plaintiff and Proposed Class Members known of this serious safety risk, they would not have purchased the Class Refrigerators, would have paid substantially less for their Class Refrigerators than they paid, and/or would have removed them from their homes before their linear compressors failed.

## CLASS ALLEGATIONS

68.     Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3) and for his warranty claims under the Magnusson-Moss Warranty Act, Plaintiff brings this action on behalf of himself and all other persons similarly situated. In particular, he seeks to represent the following class:

> **Nationwide Class:** All residents of the United States and its territories who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

In the alternative, Plaintiff proposes the following State Warranty Sub-Class:

> **Texas and Substantially Similar States Class**: All residents of Texas and any state with material similar implied warranty laws who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

Excluded from the above Nationwide Class and State Sub-Class (collectively, the "Classes") are: Transformco, its officers, directors, and employees; entities in which Transformco has a controlling interest or which have a controlling interest in Transformco, and those entities' officers, directors, and employees; the judge assigned to this case and his immediate family; all expert witnesses in this case; and, all persons who make a timely election to be excluded from the Classes.

3073512.1

## I.     <u>THE PROPOSED CLASS MEETS THE PREREQUISITES OF RULE 23(a)</u>

69.     <u>Numerosity</u>. Upon information and belief, the Proposed Class includes many thousands of individuals, and, thus, is so numerous that joinder of all members would be impracticable. Transformco and its corporate predecessor have issued warranties for millions of Class Refrigerators, and since February 11, 2019, Transformco has sold the Class Refrigerators and assumed the warranty obligations for the Class Refrigerators sold before that date.

70.     <u>Commonality.</u> The answers to questions common to the Class will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Class Refrigerators' common design, whether the design is defective, whether the defective design poses a safety risk, Transformco's knowledge of the defect, the uniform diminution in value of the Class Refrigerators, and the corresponding unjust enrichment to Transformco. The common questions of law and fact include, but are not limited to, the following:

        a.     whether the Class Refrigerators pose unreasonable safety risks to consumers;

        b.     whether Transformco knew, or should have known, that the products they sold into the stream of commerce pose unreasonable safety risks to consumers;

        c.     whether Transformco concealed the safety risks their Class Refrigerators pose to consumers;

        d.     whether the safety risks the Class Refrigerators pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

        e.     whether the Class Refrigerators possess a material defect;

f.     whether Transformco knew or should have known of the inherent defect in the Class Refrigerators when they placed them into the stream of commerce;

g.     whether Transformco concealed the defect from consumers;

h.     whether the existence of the defect is a material fact that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

i.     whether the Class Refrigerators are merchantable; and

j.     whether any false warranties and material omissions by Transformco concerning their defective Class Refrigerators caused Class Members' injuries.

71.     Typicality. Plaintiff has the same interests as all members of the Classes he seeks to represent, and all of Plaintiff's claims arise out of the same set of facts and conduct as all other members of the Classes. Plaintiff and all Class Members own or owned a Class Refrigerator that contains a linear compressor with a uniform defect that causes the Class Refrigerators to fail within their expected useful lives. All of the claims of Plaintiff and Class Members arise out of Transformco's placement of a product into the marketplace they knew was defective and posed safety risks to consumers, and from Transformco's failure to disclose the known safety risks and defect. Also common to Plaintiff and Class Members' claims are

a.     Plaintiff's and Class Members' purchase of the defective Class Refrigerators;

b.     Transformco's conduct in 1) marketing, advertising, distributing, warranting, selling, and servicing the defective Class Refrigerators; and 2) concealing the defect in the Class Refrigerators.

72.     Adequacy. Plaintiff will fairly and adequately represent and protect the interest of the Class Members: Plaintiff's interests align with those of the Class Members, and Plaintiff has

3073512.1

no fundamental conflicts with the Class. Plaintiff has retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

## II.    THE PROPOSED CLASS MEETS THE PREREQUISITES OF RULE 23(b)(3) AND RULE 23(c)(4).

73.    Predominance and Superiority. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class. A class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Transformco acted in a uniform manner with respect to the Plaintiff and Class Members.

74.    Transformco is a sophisticated party with substantial resources, while Class Members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Class Member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Class Members to seek redress individually for Transformco's wrongful conduct as alleged herein.

75.    The concealed safety risks described above counsel in favor of swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

76.    Plaintiff and Class Members have all suffered and will continue to suffer harm and damages as a result of Transformco's unlawful and wrongful conduct. Absent a class action, Class Members will continue to suffer the undisclosed risk of linear compressor failure and incur monetary damages, and Transformco's misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

77.     There will be no undue difficulty in the management of this litigation as a class action.

78.     Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all Class Members and materially advance the litigation.

## III.     THE PROPOSED CLASS IS ASCERTAINABLE.

79.     The Classes are defined by reference to objective criteria and there is an administratively feasible mechanism to determine who fits within the Classes. The Classes consists of purchasers and owners of Class Refrigerators, and class membership can be determined using receipts, photographs, ownership documentation, and records in Transformco's and other databases.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**810 ILL. COMP. STAT. 5/2-313**
**15 U.S.C. §§ 2301–2312**
**Against Transform SR Brands**

80.     Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

81.     Plaintiff brings this action on behalf of himself and the Proposed Nationwide Class against Transform SR Brands.

82.     Illinois law applies to all members of the Proposed Nationwide Class under Illinois' choice of law principals, both because Illinois has the most significant relationship to all claims and because Illinois implied warranty law is not materially different from the implied warranty law in other states with respect to the claims at issue in this case.

83. Plaintiff and the Proposed Class Members are "buyers" within the meaning of 810 Ill. Comp. Stat. 5/2-313(a). Transform SR Brands is a "seller" within the meaning of 810 Ill. Comp. Stat. 5/2-313.

84. The Class Refrigerators are "goods" within the meaning of 810 Ill. Comp. Stat. 5/2-313.

85. Transform SR Brands provided Plaintiff and Proposed Class Members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6). Transform SR Brands expressly warranted in writing that, "FOR TEN YEARS from the date of sale, the linear compressors of [the Class Refrigerators are] warranted against defects in material or workmanship."

86. In its capacity as warrantor, and by the conduct described herein, any attempts by Transform SR Brands to limit the express warranties in a manner that would exclude coverage of the defective linear compressor is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective linear compressor is null and void.

87. All jurisdictional prerequisites have been satisfied.

88. In its warranty to customers, Transform SR Brands also warrants in writing that it provides the following warranties: one-year warranty against defects in material and workmanship; five years against defects in the sealed system; and a lifetime warranty on storage bins.

89. Plaintiff and the Proposed Class Members reasonably relied upon Transform SR Brands' representations in deciding to purchase the Class Refrigerators.

90. The Class Refrigerators fail to conform to Transform SR Brands' express representations insofar as they contain a defective linear compressor.

91. By selling Class Refrigerators containing a defective linear compressor to consumers like Plaintiff and Proposed Class Members after it gained knowledge of the Defect, Transform SR Brands breached its express warranty to provide refrigerators that were free from defects.

92. Transform SR Brands also breached its express warranty to repair and correct material defects or component malfunctions in the Class Refrigerators when it failed to do so despite knowledge of the linear compressor defect and despite knowledge of alternative designs, alternative materials, and options for retrofits.

93. Transform SR Brands has not made repairs correcting the defective linear compressors in the Class Refrigerators, including Plaintiff's Refrigerator.

94. The limited warranty of repair for the Class Refrigerators fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Proposed Class Members whole and because Transform SR Brands has refused to provide the promised remedies within a reasonable time. Plaintiff and Proposed Class Members are thus not limited to the limited warranty of "repair" and Plaintiff and Proposed Class Members seek all remedies allowed by law.

95. All purported limitations on Transform SR Brands' written warranty are ineffective because it would be unconscionable to enforce them for the reasons described in this complaint. Among other things, at the time Transform SR Brands warranted and sold the Class Refrigerators, it knew that the Class Refrigerators did not conform to the warranties and were inherently defective, and Transform SR Brands wrongfully and fraudulently misrepresented and concealed material facts regarding the Class Refrigerators.

96.     Transform SR Brands knew that Plaintiff's Refrigerator malfunctioned but failed to provide defect-free Class Refrigerators to Plaintiff or Proposed Class Members free of charge when their Class Refrigerators failed or to provide an adequate retrofit to remedy the Class Refrigerators.

97.     Transform SR Brands was provided with notice and has been on notice of the defective linear compressor and of its breach of express written warranties through its own internal and external testing as well as hundreds or thousands of consumer warranty claims and customer complaints reporting malfunctions in the Class Refrigerators—including, on information and belief, claims and complaints sent by members of the Proposed Class—yet it failed to repair, replace, or retrofit the Class Refrigerators to ensure they were free of material defects or component malfunctions as Transform SR Brands promised.

98.     Transform SR Brands was also provided with notice by Plaintiff Grotte in or around April 2024, when he called Transformco and attempted to arrange for an authorized technician to inspect his refrigerator, which had stopped cooling. Despite the express warranty covering defects in the material or workmanship of the linear compressor in Plaintiff Grotte's refrigerator, Transformco neither sent a technician to repair the refrigerator nor paid for the necessary repair.

99.     Transform SR Brands' conduct as described herein, including Transform SR Brands' knowledge of the defective linear compressors and its action, and inaction, in the face of that knowledge, fails to comply with its obligations under its written and implied promises, warranties, and representations.

100.    Transform SR Brands' breach of express warranties violates the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

101.    As a direct and proximate result of Transform SR Brands' breach of its express warranty, Plaintiff and Proposed Class Members have suffered damages.

102.    Transform SR Brands' breach of its expressed warranties damaged Plaintiff and the Proposed Nationwide Class in an amount to be proven at trial.

103.    As a result of Transform SR Brands' breach of express warranties, Plaintiff and Proposed Class Members are entitled to revoke their acceptance of the Class Refrigerators, obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**810 ILCS 5/2-314**
**15 U.S.C. §§ 2301–2312**
**Against Transform SR Brands**

104.    Plaintiff re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

105.    Plaintiff bring this action on behalf of himself and the Proposed Nationwide Class against Transform SR Brands.

106.    Illinois law applies to all members of the Proposed Nationwide Class under Illinois' choice of law principals, both because Illinois has the most significant relationship to all claims and because Illinois implied warranty law is not materially different from the implied warranty law in other states with respect to the claims at issue in this case.

107.    Transform SR Brands was at all relevant times a "merchant" with respect to the Class Refrigerators under Illinois' commercial code.

108.    The Class Refrigerators were at all relevant times "goods" within the meaning of Illinois' commercial code.

3073512.1

109. The Class Refrigerators are "consumer products," as that term is defined by 15 U.S.C. §2301(1).

110. Plaintiff and Proposed Nationwide Class Members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

111. Transform SR Brands is a "warrantor" and "supplier," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

112. Transform SR Brands provided Plaintiff and Proposed Nationwide Class Members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

113. In their capacity as warrantors and by the conduct described herein, any attempt by Transform SR Brands or its predecessor to limit the implied warranties in a manner that would exclude coverage of the defective Refrigerators is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Refrigerators is void.

114. All jurisdictional prerequisites have been satisfied herein.

115. The Defect is a result of the Refrigerators' design and is not the product of any manufacturing flaw or alteration in the Refrigerators after they were manufactured. In other words, the Defect existed at the point of design, manufacture, distribution, and sale.

116. A warranty that the Refrigerators were in merchantable condition and fit for the ordinary purpose for which Refrigerators are used is implied by law pursuant to 810 ILCS 5/2-314. This implied warranty of merchantability is part of the basis for the bargain between Transform SR Brands (including as the assignee of Sears' liabilities), on the one hand, and Plaintiff and Proposed Class Members, on the other.

117. Notwithstanding the aforementioned duty, at the time of delivery, Transform SR Brands breached the implied warranty of merchantability because the Refrigerators are not fit for

the ordinary purposes for which such goods are used and failed to conform to the standard performance of like products used in the trade. This is so for the reasons stated above, including that the Refrigerators do not consistently maintain an appropriate temperature when operated as Transform SR Brands instructed and intended at the time Plaintiff and Proposed Nationwide Class Members purchased the Refrigerators, for the industry standard lifetime of at least 10 years.

118.    Transform SR Brands knew or should have known that the Refrigerators posed a safety risk and were defective as designed and knew or should have known that selling the Refrigerators to Plaintiff and Proposed Nationwide Class Members as marketed constituted a breach of the implied warranty of merchantability.

119.    As a direct and proximate result of Transform SR Brands' breach of the implied warranty of merchantability, Plaintiff and Proposed Class Members bought the Refrigerators without knowledge of the Defect or its serious safety risks.

120.    As a direct and proximate result of Transform SR Brands' breach of the implied warranty of merchantability, Plaintiff and Proposed Class Members purchased unsafe products which could not be used for their intended purpose of safely storing food in a residential setting.

121.    As a direct and proximate result of Transform SR Brands' breach of the implied warranty of merchantability, Plaintiff and Proposed Class Members have suffered damages and did not receive the benefit of their bargain.

122.    Transform SR Brands' breach of implied warranties violates the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq.

123.    Transform SR Brands' breaches of the implied warranty of merchantability damaged Plaintiff and the Proposed Nationwide Class in an amount to be proven at trial. Among

other things, the market price of the product that Plaintiff and the Proposed Nationwide Class

Members actually paid for (i.e., machines that could be used safely to store food) is higher than

the market price of the product that Transform SR Brands provided (i.e., machines that cannot

maintain an appropriate temperature). Additionally, Plaintiff and Proposed Class Members are

entitled to revoke their acceptance of the Refrigerators, obtain damages and equitable relief, and

obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

124.    Plaintiff and Proposed Class Members are also entitled to damages under 810

ILCS 5/2-714.

### THIRD CAUSE OF ACTION
**Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act**
**815 Ill. Comp. Stat. 505/1,** *et seq.*
**Against Transform SR**

125.    Plaintiff re-alleges and incorporates by reference all preceding allegations as

though fully set forth herein.

126.    Plaintiff and Proposed Class Members are persons under the Illinois Consumer

Fraud and Deceptive Business Practices Act, 815 ILCS 505, *et seq.*

127.    Transform SR's and its predecessor's acts and practices complained of herein

were performed in the course of Transform SR's trade or business and thus occurred in or

affected "commerce," as defined by the Illinois Consumer Fraud and Deceptive Business

Practices Act.

128.    The Illinois Uniform Deceptive Trade Practice Act makes unlawful "unfair or

deceptive acts or practices[.]" The Illinois Uniform Deceptive Trade Practice Act provides a

private right of action for any person injured by a violation of the Illinois Consumer Fraud and

Deceptive Business Practices Act.

-33-

129. In the course of its business, Transform SR and its predecessor violated the Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the reliability, safety, and performance of the Class Refrigerators, as detailed above.

130. Specifically, by misrepresenting the linear compressors contained in the Class Refrigerators as free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the defective linear compressor and/or the Class Refrigerators that used it, Transform SR and its predecessor engaged in the unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce.

131. Plaintiff and Proposed Class Members had no way of discerning that Transform SR's representations were false and misleading and/or otherwise learning the facts that Transform SR had concealed or failed to disclose. Plaintiff and Proposed Class Members did not, and could not, unravel Transform SR's deception on their own.

132. Transform SR had an ongoing duty to Plaintiff and Proposed Class Members to refrain from unfair or deceptive practices under the Illinois Consumer Fraud and Deceptive Business Practices Act in the course of its business. Specifically, Transform SR and its predecessor owed Plaintiff and Proposed Class Members a duty to disclose all the material facts concerning the linear compressor in the Class Refrigerators because it possessed exclusive knowledge, it intentionally concealed the defect from Plaintiff and Proposed Class Members, and/or it made misrepresentations that were misleading because they were contradicted by withheld facts.

133.    Transform SR's and its predecessor's violations present a continuing risk to Plaintiff and Proposed Class Members, as well as to the general public. Transform SR's unlawful acts and practices complained of herein affect the public interest.

134.    Plaintiff and Proposed Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Transform SR's and its predecessor's misrepresentations and concealment of and failure to disclose material information.

135.    Pursuant to the Illinois Consumer Fraud and Deceptive Business Practices Act, Plaintiff and Proposed Class Members seek all just and proper remedies, including but not limited to treble damages, an order enjoining Transform SR's deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

### FOURTH CAUSE OF ACTION
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Tex. Bus. & Com. Code § 2.314.**
***Asserted in the alternative that Illinois law does not apply to Texas Sub-Class***
**Against Transform SR Brands**

136.    Plaintiff re-alleges and incorporates by reference all preceding allegations as though fully set forth herein.

137.    Transform SR Brands and its predecessor are and were at all relevant times a "merchant" with respect to the Class Refrigerators and "seller" of the Class Refrigerators. Tex. Bus. & Com. Code §§ 2.103(a)(4), 2.104(1).

138.    Plaintiff and Proposed Class Members who purchased Class Refrigerators are "buyers" within the meaning of Tex. Bus. & Com. Code § 2.103(a).

139.    The Class Refrigerators are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code §§ 2.103(a)(1).

3073512.1

140.    A warranty that the Class Refrigerators were in merchantable condition and fit for the ordinary purpose for which refrigerators are used is implied by law pursuant to Tex. Bus. & Com. Code § 2.314.

141.    The Class Refrigerators did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which refrigerators were used (safely storing food in a residential setting). Specifically, the Class Refrigerators are defective because they contain defective linear compressors which fail and cause the Refrigerators to run above the temperature required to store food safely.

142.    As a direct and proximate result of Transform SR Brands' and its predecessor's breach of the implied warranty of merchantability, Plaintiff and Proposed Sub-Class Members have been damaged in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**VIOLATIONS OF THE DECEPTIVE TRADE PRACTICES ACT**
**Tex. Bus. & Com. Code § 17.41 *et seq.***
***Asserted in the alternative that Illinois law does not apply to Texas Sub-Class***
**Against Transform SR**

143.    Plaintiff Grotte re-alleges and incorporates by reference all paragraphs as though fully set forth herein.

144.    Plaintiff Grotte brings this claim on behalf of himself and the Proposed Texas Sub-Class against Transform SR.

145.    Plaintiff Grotte and the Proposed Texas Sub-Class are individuals, partnerships or corporations with assets of less than $25 million (or are controlled by corporations or entities with less than $25 million in assets), *see* Tex. Bus. & Com. Code § 17.41, and are therefore

-36-

"consumers" pursuant to Tex. Bus. & Com. Code § 17.45(4). Transform SR and its predecessor are and were a "person" within the meaning of Tex. Bus. & Com. Code § 17.45(3).

146. Transform SR and its predecessor engaged in "trade" or "commerce" or "consumer transactions" within the meaning Tex. Bus. & Com. Code § 17.46(a).

147. The Texas Deceptive Trade Practices – Consumer Protection Act ("Texas DTPA") prohibits "false, misleading, or deceptive acts or practices in the conduct of any trade or commerce," Tex. Bus. & Com. Code § 17.46(a), and an "unconscionable action or course of action," which means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code §§ 17.45(5) and 17.50(a)(3).

148. In the course of its business, Transform SR and its predecessor concealed and suppressed material facts concerning the Class Refrigerators. Transform SR and its predecessor accomplished this by deliberately not disclosing the fact that the Class Refrigerators were defective because they contained defective linear compressors that caused the Refrigerators to stop cooling.

149. Plaintiff Grotte and the Proposed Texas Sub-Class Members had no way of discerning that Transform SR and its predecessor's representations were false and misleading because Proposed Texas Class members did not have access to Transform SR and its predecessor's information about the Class Refrigerators and the defective linear compressors.

150. Transform SR and its predecessor thus violated the Act by, at minimum: representing that Class Refrigerators have characteristics, uses, benefits, and qualities which they do not have; representing that Class Refrigerators are of a particular standard, quality, and grade when they are not; advertising Class Refrigerators with the intent not to sell them as advertised;

and representing that the subject of a transaction involving Class Refrigerators has been supplied in accordance with a previous representation when it has not.

151.    Transform SR and its predecessor intentionally and knowingly misrepresented material facts regarding the Class Refrigerators with intent to mislead Plaintiff Grotte and the Proposed Texas Sub-Class.

152.    Transform SR and its predecessor knew or should have known that their conduct violated the Texas DTPA.

153.    Transform SR and its predecessor owed Plaintiff Grotte and the Proposed Texas Sub-Class a duty to disclose the illegality and public health risks, the true nature of the Class Refrigerators, because Transform SR and its predecessor:

        a.    possessed exclusive knowledge that it was manufacturing, selling, and distributing defective Class Refrigerators throughout the United States;

        b.    intentionally concealed the foregoing from Proposed Texas Sub-Class Members; and/or

        c.    made incomplete representations about the Class Refrigerators' cooling capabilities while purposefully withholding material facts that contradicted these representations.

154.    Transform SR and its predecessor's concealment of the true characteristics of the Class Refrigerator's cooling capabilities were material to the Proposed Texas Class.

155.    Transform SR's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Proposed Texas Sub-Class, about the true cooling capabilities of the Class Refrigerator, the quality of Transform SR and its predecessor's brands, and the true value of the Class Refrigerators.

156.     Transform SR and its predecessor's violations present a continuing risk to the Proposed Texas Sub-Class as well as to the general public. Transform SR and its predecessor's unlawful acts and practices complained of herein affect the public interest.

157.     Proposed Texas Sub-Class Members suffered ascertainable loss and actual damages as a direct and proximate result of Transform SR and its predecessor's misrepresentations and concealment of and failure to disclose material information. Transform SR and its predecessor had an ongoing duty to all its customers to refrain from unfair and deceptive practices under the Texas DTPA. All owners of Class Refrigerators suffered ascertainable loss as a result of Transform SR and its predecessor's deceptive and unfair acts and practices made in the course of Transform SR and its predecessor's business.

158.     Pursuant to Tex. Bus. & Com. Code § 17.50, the Proposed Texas Sub-Class seeks an order enjoining Transform SR's unfair and/or deceptive acts or practices, damages, multiple damages for knowing and intentional violations, pursuant to § 17.50(b)(1), punitive damages, and attorneys' fees, costs, and any other just and proper relief available under the Texas DTPA.

159.     Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiff Grotte previously gave notice to Sears of the problem with his Class Refrigerator by requesting a service visit after his refrigerator stopped cooling properly. Additionally, Transform SR was provided notice of the issues raised in this count and this Complaint by way of numerous consumer complaints and prior consumer lawsuits. The Proposed Texas Class seeks all damages and relief to which it is entitled.

*  *  *

WHEREFORE, Plaintiff individually and on behalf of the above defined Classes, by and through counsel, pray the Court grant the following relief:

A.      An Order certifying this action as a class action pursuant to Rule 23 of the Federal

Rules of Civil Procedure;

B.      An Order appointing Plaintiff as the representative for the Classes and appointing

his counsel as lead counsel for the Classes;

C.      An order awarding Plaintiff and all other Class Members damages in an amount

to be determined at trial for the wrongful acts of Transformco and its predecessor

described herein;

D.      Restitution as authorized by law;

E.      Payment of any economic, direct, actual, general, incidental, and consequential

damages, in an amount to be proven at trial;

F.      Payment to the Classes of all damages associated with the replacement of the

defective products and parts, in an amount to be proven at trial;

G.      Payment to the Classes of punitive damages, in an amount to be proven at trial;

H.      An order awarding attorney's fees pursuant to applicable State and common laws;

I.      Interest as provided by law, including but not limited to pre judgment and post-

judgment interest as provided by rule or statute; and

J.      Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury on all counts so triable.

Dated: August 6, 2024                          Respectfully submitted,


By:  */s/ Jason L. Lichtman*
        Jason L. Lichtman (IL Bar No: 6290052)
        Jonathan D. Selbin
        Andrew Kaufman
        **LIEFF CABRASER HEIMANN**
        **& BERNSTEIN, LLP**

250 Hudson Street, 8th Floor
New York, New York 10013
Telephone: 212.355.9500
Email: jlichtman@lchb.com
          jselbin@lchb.com
          akaufman@lchb.com

Joseph S. Tusa (N.D. Ill. Bar No. 2717809)
**TUSA P.C.**
55000 Main Road, 2nd Floor
P.O. Box 566
Southold, NY  11971
Telephone 631.407.5100
Email: joseph.tusapc@gmail.com

Gary Klinger (IL Bar No: 6303726)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
Email: gklinger@milberg.com

3073512.1