IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES GROTTE, TAMMY ALBERTELLI, ALTHEA EDWARDS, KATHERINE FJELSTAD, THEODORE FUSSNER, THERESA FUSSNER, HEATHER HARTMAN, SARAH LLOYD, MICHELLE MEYER, JOHN PEIOS, and GARY STEWART, *individually and on behalf of all those similarly situated*,<br><br>        Plaintiffs,<br><br>   v.<br><br>TRANSFORM SR, LLC, TRANSFORM SR BRANDS MANAGEMENT, LLC, LG ELECTRONICS, INC., and LG ELECTRONICS USA, INC.,<br><br>        Defendants. | Case No. 1:24-cv-6892 |

## <u>AMENDED CLASS ACTION COMPLAINT</u>

1.     Plaintiffs bring this class action against Transform SR, LLC, Transform SR Brands Management, LLC, LG Electronics, Inc., and LG Electronics USA, Inc. on behalf of consumers who purchased a Class Refrigerator—any Kenmore-branded refrigerator that contained an LG-branded common defective component called a "linear compressor" that was sold in the United States within 10 years from the filing of the related action styled, *Cristofoletti, et al. v. Transform SR, LLC, et al.*, No. 23-cv-1318-JFK-HKM (the "*Cristofoletti* Action").

2.     A compressor is often referred to as the "heart" of a refrigerator because its function is to circulate refrigerant throughout the system. A refrigerator cannot work without a functioning compressor, although a well-maintained, properly functioning refrigerator compressor should function for at least 10 years. Indeed, upon information and belief, many of

the Class Refrigerators came with an express warranty that the compressors would function for 10 years.

3.     Defendant Transform SR, LLC ("Transform SR") operates Sears, Roebuck & Co. ("Sears"), both Sears' physical stores and its website (https://www.sears.com/). Transform SR and its predecessor distributed, marketed, advertised, and sold the Class Refrigerators.

4.     Defendant Transform SR Brands Management, LLC ("Transform SR Brands") warrants and services Kenmore-branded products, including the Class Refrigerators. Transform SR Brands' holding company—Transform Holdco LLC—took express assignment and assumed all liabilities arising from warranties for Class Refrigerators sold by its corporate predecessor before February 11, 2019.

5.     Defendant LG Electronics, Inc. ("LG Korea") designed, manufactured, and distributed the linear compressors incorporated in the Class Refrigerators.

6.     Defendant LG Electronics USA, Inc. ("LG USA") is wholly-owned subsidiary of LG Korea that distributed, marketed, promoted, and sold the linear compressors incorporated in the Class Refrigerators.

7.     Defendants, as well as their predecessors, where relevant, have been aware of the linear compressor defect in the Class Refrigerators for several years. Defendants, as well as their predecessors, where relevant, learned of this defect through reported failures by consumers, a large volume of warranty claims, and several lawsuits.

8.     Despite their knowledge of the linear compressor defect and its propensity to cause the Class Refrigerators to fail relatively shortly after purchase, Defendants took no steps to disclose the defect to consumers and instead continued to incorporate the defective linear compressors in the Class Refrigerators and to advertise the Class Refrigerators as reliable products misleadingly.

3072935.8

9. The Class Refrigerators pose unreasonable risks of property damage and personal injury via food-borne illnesses during normal use.

10. Plaintiffs seek money damages. A refrigerator that fails to keep food at a safe temperature has no value because it cannot be used safely. In the alternative, the Class Refrigerators have significantly less value than promised at the point of sale (*i.e.*, a refrigerator that is prone to storing food at an improper temperature is less valuable than one that can store food at a safe temperature).

11. The below allegations are based upon personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others.

## THE PARTIES

### I. PLAINTIFFS

#### A. JAMES GROTTE

12. Plaintiff James Grotte is a resident of Texas.

13. Plaintiff Grotte purchased his Class Refrigerator (Model Number: 795.73167.610) in mid- to late-2019 from a Sears store in Texas.

#### B. TAMMY ALBERTELLI

14. Plaintiff Tammy Albertelli is a resident of Pennsylvania.

15. Plaintiff Albertelli purchased her Class Refrigerator (Model Number: 795.51833.413) online from Sears on June 9, 2019.

#### C. ALTHEA EDWARDS

16. Plaintiff Althea Edwards is a resident of California.

17. Plaintiff Edwards purchased her Class Refrigerator (Model Number: 795.72489.412) at a Sears store in California on December 16, 2019.

### D.    KATHERINE FJELSTAD

18.    Plaintiff Katherine Fjelstad is a resident of Florida.

19.    Plaintiff Fjelstad purchased her Class Refrigerator (Model Number: 795.72595.710) on March 25, 2019 from a Sears store in Jacksonville, Florida.

### E.    THEODORE AND THERESA FUSSNER

20.    Plaintiffs Theodore and Theresa Fussner are residents of Ohio.

21.    Plaintiffs Theodore and Theresa Fussner purchased their Class Refrigerator (Model Number: 795.51833.413) on August 30, 2019 from a Sears Outlet store in Huber Heights, Ohio.

### F.    HEATHER HARTMAN

22.    Plaintiff Heather Hartman is a resident of Pennsylvania.

23.    Plaintiff Hartman purchased her Class Refrigerator (Model Number: 795.73165.610) on August 25, 2019 from a Sears store in Whitehall, Pennsylvania.

### G.    SARAH LLOYD

24.    Plaintiff Sarah Lloyd is a resident of Illinois.

25.    Plaintiff Lloyd received her Class Refrigerator (Model Number: 795.74113.710) from Sears in mid-2019 as a warranty replacement.

### H.    MICHELLE MEYER

26.    Plaintiff Michelle Meyer is a resident of Massachusetts.

27.    Plaintiff Meyer purchased her Class Refrigerator (Model Number: 795.74039.412) in 2017 at a Sears store in Massachusetts.

### I.    JOHN PEIOS

28.    Plaintiff John Peios is a resident of New York.

29. Plaintiff Peios purchased his Class Refrigerator (Model Number: 795.72483.411) at a Sears store in Dewitt, New York on July 8, 2016.

**J. GARY STEWART**

30. Plaintiff Gary Stewart is a resident of Washington.

31. Plaintiff Stewart received his Class Refrigerator (Model Number: 795.72483.411) from Sears on March 5, 2019 as a warranty replacement.

**II. DEFENDANTS**

**A. Transform SR, LLC**

32. Defendant Transform SR, LLC ("Transform SR") is an Illinois corporation headquartered in Hoffman Estates, IL.

33. Transform SR operates Sears, Roebuck & Co. ("Sears"), both Sears' physical stores and its website (https://www.sears.com/).

34. Through Sears and Kenmore, Transform SR markets, advertises, distributes, and sells the Class Refrigerators in and from this jurisdiction.

35. Upon information and belief, Transform SR contracted with LG Korea and/or LG USA to manufacture the Class Refrigerators, including the linear compressors contained therein.

36. Transform SR is and has at all relevant times been in the business of marketing, advertising, distributing, and selling the Class Refrigerators described herein throughout the United States and in this jurisdiction. Transform SR purposely directs its conduct toward this District and engages in a continuous course of business in this District, including by selling thousands of refrigerators and other consumer goods in this District every year.

**B. Transform SR Brands Management, LLC**

37. Defendant Transform SR Brands Management, LLC ("Transform SR Brands") is an Illinois corporation headquartered in Hoffman Estates, IL.

3072935.8

38.     Transform SR Brands warrants and services Kenmore-branded products, including Class Refrigerators and the defective linear compressors contained therein.

39.     Through Sears and Kenmore, Transform SR Brands warrants and services the Class Refrigerators in and from this jurisdiction.

40.     Transform SR Brands is and has at all relevant times been in the business of warranting and servicing the Class Refrigerators described herein throughout the United States and in this jurisdiction. Transform SR Brands purposely directs its conduct toward this District and engages in a continuous course of business in this District, including by warranting and servicing thousands of refrigerators and other consumer goods in this District every year.

41.     On February 11, 2019, Transform SR Brands' parent company purchased the assets of Sears Holding Corporation. Under this asset purchase agreement, Transform SR Brands' parent company—Transform Holdco LLC—assumed all liabilities for warranties and protection agreements or other services contracts (other than warranties relating to Intellectual Property) for the goods and services of Sellers sold or performed prior to February 11, 2019. Since February 11, 2019, Transformco or its corporate affiliates also sold the Class Refrigerators. Upon information and belief, Transform SR Brands is the subsidiary that then assumed warranty and servicing liabilities relating to the Class Refrigerators.

**C.      LG Electronics, Inc.**

42.     Defendant LG Electronics Co. ("LG Korea") is a South Korean multinational corporation based in Seoul, South Korea with United States headquarters in San Diego California. LG Korea is a wholly-owned subsidiary of the conglomerate, LG Corporation.

43.     LG Korea is and has at all times relevant been in the business of designing, manufacturing, and distributing the Class Refrigerators, and the linear compressors contained therein, for sale throughout the United States and in this jurisdiction. LG Korea purposely directs

its conduct toward this District and engages in a continuous, substantial course of business in this District by registering wholly-owned subsidiaries with the Illinois Secretary of State that serve as its agents in its commercial dealings with U.S. businesses (including Transformco), maintaining a registered agent for that wholly-owned subsidiary in Springfield, Illinois, and distributing thousands of Class Refrigerators and other consumer goods in this District every year.

### D. **LG Electronics U.S.A., Inc.**

44.     Defendant LG Electronics U.S.A. Inc. ("LG USA"), a Delaware corporation with headquarters in Englewood Cliffs, NJ, is a wholly-owned subsidiary of LG Korea.

45.     LG USA is and has at all relevant times been in the business of distributing and selling the Class Refrigerators, and the linear compressors contained therein, throughout the United States and in this jurisdiction. LG USA purposely directs its conduct toward this District and engages in a continuous, substantial course of business in this District by registering with the Illinois Secretary of State, maintaining a registered agent in Springfield, Illinois, and selling thousands of Class Refrigerators and other consumer goods in this District every year.

46.     LG USA maintains offices at in Bolingbrook, Buffalo Grove, and Lincolnshire, Illinois, and, upon information and belief, multiple LG USA senior executives maintain offices in the state. Additionally, LG USA has, upon information and belief, more than 1,000 employees in the United States and approximately 100 employees in Illinois.

### JURISDICTION AND VENUE

47.     This Court has original jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (a) at least one member of the Proposed Classes is a citizen of a state different from that of Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, (c) the Proposed Classes consist of more than 100 class members, and (d) none of the exceptions under 28 U.S.C. § 1332(d) apply to this action.

-7-

48.     The United States District Court for the Northern District of Illinois has jurisdiction over Transform SR and Transform SR Brands (together, "Transformco") because they reside and conduct business in Illinois, have purposely availed themselves of the laws of Illinois, and because many of the specific events giving rise to this action occurred in Illinois.

49.     The United States District Court for the Northern District of Illinois has jurisdiction over LG USA and LG Korea (together, "LG") because they conduct business in Illinois, have purposefully directed their activities toward Illinois (including to do business with Transformco relating to the Refrigerators), have purposely availed themselves of the laws of Illinois, and because many of the specific events giving rise to this action occurred in Illinois.

50.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' and the Classes' claims occurred in this District. Defendants have manufactured, distributed, marketed, and/or sold the Class Refrigerators, including the linear compressors incorporated therein, and otherwise conducted extensive business, within this District. In addition, Transformco's principal place of business is in Illinois.

51.     Venue is further proper in this District because this case is related to a factually and legally similar class action pending in this District, the *Cristofoletti* Action.

## GENERAL FACTUAL ALLEGATIONS

52.     A crucial component of any modern American household, refrigerators are found in the vast majority of homes. By cooling food and medicines, like insulin, to safe temperatures, refrigerators reduce the risk of illness.

3072935.8

53.     According to most manufacturers, properly functioning refrigerators should have an average lifespan of 10 years.[1]

## I.     THE CLASS REFRIGERATORS CONTAIN A DEFECTIVE LINEAR COMPRESSOR

54.     Every refrigerator has a compressor. It is a critical component to the operation of a refrigerator because it moves or pumps refrigerant—a cooling substance that changes from liquid to gas—through the refrigerator's system. The refrigerator's temperature sensors trigger the compressor to start and stop the cooling process. Once the temperature rises above a set level, the compressor starts by drawing cold refrigerant gas from the refrigerator's evaporator. The refrigerant enters the compressor through an intake valve and the compressor then puts pressure on the refrigerant gas (compressing it), which raises the refrigerant's temperature and pushes the gas through its discharge valve, then through the coils on the outside of the refrigerator. When the hot gas in the coils meets the cooler air temperature in the room, it becomes a liquid. The refrigerant then passes through an expansion valve, which decreases its pressure, and continues to flow through the coils inside the freezer and the refrigerator. As the cold liquid refrigerant moves through the coils, it cools the air in the refrigerator by absorbing the heat from the surrounding air. The refrigerant then evaporates into gas, flows back into the compressor, and the process repeats.

55.     The Class Refrigerators and defective linear compressors at issue in this lawsuit were designed and made by LG. LG first introduced its proprietary linear compressor technology in 2001 as an energy-efficient replacement for the reciprocating compressor used in many other

---

[1] Daniel Wroclawski, *How to Make Your Refrigerator Last Longer*, CONSUMER REPORTS (June 20, 2019), https://www.consumerreports.org/refrigerators/how-to-make-your-refrigerator-last-longer-a3675077642/.

refrigerators. A linear compressor is distinct from other compressors because the piston used to compress gas moves along a linear track.

56.     LG's linear compressors are defective because they often fail well before the industry standard (and typical warranty period) of 10 years of normal usage.

57.     Although discovery will confirm all the root causes of the defect in LG's linear compressors, the compressors appear to have a discharge valve (the valve that regulates the flow of the refrigerant from the compressor) that is weak and prone to failure from ordinary usage.

58.     When the defective linear compressor fails, the Class Refrigerators stop cooling and run above the temperature required to store food and other consumable goods safely. This causes food stored in the Class Refrigerators to spoil, posing a safety risk to consumers who might become ill from ingesting spoiled goods.

59.     LG also distributes a replacement compressor for the Class Refrigerators. Those replacements routinely fail before the industry standard of 10 years.

60.     The defective linear compressor is found in all Class Refrigerators. Based on publicly available information regarding the defective linear compressors, at least the following Kenmore refrigerator models appear to have the defective linear compressor: 51833, 72372, 72373, 72379, 72482, 72483, 72489, 72595, 73055, 73105, 73165, 73167, 74012, 74012, 74013, 74013, 74015, 74019, 74022, 74023, 74023, 74024, 74025, 74029, 74032, 74033, 74039, 74042, 74043, 74049, 74053, 74063, 74113, 75049, 79983, and 79993. Plaintiffs each purchased one of these model number Class Refrigerators from Transformco or its predecessors. Upon information and belief, there are many other Kenmore refrigerator models with the defective linear compressor. Discovery from Defendants will identify the complete universe of these models.

61.     The Class Refrigerators range in price from approximately $1,200 to $2,700.

3072935.8

62. The Class Refrigerators come with a one-year express manufacturer's warranty for the unit. Upon information and belief, many of the Class Refrigerators also come with a ten-year express manufacturer's warranty for the linear compressor.

## II. DEFENDANTS' REPRESENTATIONS AND OMITTED INFORMATION ABOUT THE CLASS REFRIGERATORS' DEFECT

### A. LG's Representations Regarding the Linear Compressors

63. For several years, Defendants have known that the Class Refrigerators were defective as a result of the defective linear compressors, which caused the Class Refrigerators to stop cooling properly and run above the temperature required to store food safely.

64. LG's proprietary linear compressor technology is important to its business and are featured prominently in its public representations, including in advertisements and marketing materials.

65. Marking the sale of 15 million refrigerators with its linear compressor technology, LG published a press release on May 12, 2017 stating:

> LG's Inverter Linear Compressor is a critical component of every premium refrigerator and is considered a core technology behind the success of the company's appliances. Unlike conventional rotary compressors that utilize circular motion, LG's Linear Compressor converts linear motion into cooling power much more efficiently. This process reduces energy consumption and noise level compared to refrigerators with conventional motors. Since developing the Inverter Linear Compressor 16 years ago, LG has continuously worked to improve its technology.[2]

_____

[2] _LG Marks Sale of 15 Million Refrigerators Powered by its Inverter Linear Compressor Technology_, LG (May 12, 2017), https://lgcorp.com/media/release/7242#:~:text=LG%20Marks%20Sale%20of%2015%20Million%20Refrigerators,Record%20Number%20of%202017%20iF%20Design%20Awards.xt

66.    In the same press release, LG termed the linear compressor as "the appliance division's most successful core technology" and cited statistics concerning the linear compressor's performance, claiming that it "delivers 55 percent better energy efficiency and 15 percent less noise compared [to] its first generation compressor."[3]

67.    LG has singled out the linear compressor in its public statements: "The LG Inverter Linear Compressor has surpassed the 20-year lifespan test, LG is so confident it backs the compressor with a 10 year warranty."[4]

### B.    **Defendants' Knowledge of the Defect**

68.    For several years, Defendants, as well as their agents and predecessors, have known that the Class Refrigerators were defective as a result of the defective linear compressors, which caused the Class Refrigerators to stop cooling properly and run above the temperature required to store food safely.

69.    Defendants and, where relevant, their predecessors, learned of the linear compressor defect through, among other things, several lawsuits about it. For example, several consumers brought a putative class action concerning refrigerators with the linear compressor defect in *Bentley v. LG Electronics U.S.A., Inc.*, D.N.J. No. 2:19-cv-13554-MCA-MAH, and *Sosenko v. LG Elecs. U.S.A., Inc.*, C.D. Cal. No. 8:19-cv-610-JLS-ADS. Several of the consumer plaintiffs in these cases had Kenmore refrigerators. When the cases were consolidated and settled, however, the settlement class was defined to exclude all Kenmore refrigerators.

---

[3] *Id.*
[4] *Keep Fresher, Cool Faster, Save More*, LG, https://www.lg.com/uk/coretech/refrigerator-text/?srsltid=AfmBOoprN2P4AooKWvywDbR_WptUXWpJ0b5NoUT1xR6rkMg3bqeGW0qm (last visited Sept. 30, 2024).

70.     Moreover, well prior to the filing of these lawsuits, employees of Sears' and LG's warranty department received complaints from U.S. customers and assigned authorized technicians to visit the residences of complaining consumers and analyze the Class Refrigerators and other refrigerators with the defective linear compressor. Upon information and belief, these authorized technicians have been reporting large volumes of Class Refrigerator failures caused by the linear compressor defect.

71.     Hundreds of publicly available accounts of Class Refrigerator failures caused by the linear compressor defect further notified Defendants of the defect in the Class Refrigerators. Upon information and belief, Defendants and, where relevant, their predecessors, were aware of these public complaints, including through employees of Transformco's predecessor that continued work for Transformco after the February 2019 asset purchase.

a.     A September 25, 2017 consumer complaint states: "Kenmore Elite model# 795.74025.411[.] My fridge is less than two years old and just stopped working. The service tech came out and didn't even look at it and said right away that the compressor is bad. I asked how did he know that and he said they are being replaced in the unit an alarming rate. Now they cannot locate a compressor to repair the fridge. I've lost total confidence in this model refrigerator and not sure what to do, this was an expensive item and I think Sears needs to replace them with a different model that is not experiencing these problems."

b.     A September 29, 2017 consumer complaint states: "Sears Kenmore elite fridge by LG[.] Bought new fridge model 795 74029 , less that 2 years old , sears repair comes out and says , compressor is bad a debris is plugging the pencil lead thin lines. He can't blow it out and says fridge is not fixable. So I spent 200 dollars a month keeping my lettuce cold. He said buy Whirlpool. 531.00 minimum to try and fix it up to 1000.00. And only 99 day guarantee!

3072935.8

It cost me 100.00 to find this out. Can you say rip off! After 4 hours of calls to LG and Sears no help. I would be interested in hearing about any class action suits, it appears one is justified."

     c.    A November 1, 2017 consumer complaint states: "Kenmore Elite Refrigerator – NIGHTMARE[.] I purchased a Kenmore Elite Refrigerator Model 74023 (with LG compressor) in June 2015. Fast forward two years later, October 17, 2017 found the food in my fridge was warm and my all freezer food was defrosted. All of the horror stories on this site are true. Most have happened to me in the last few weeks. Multiple calls to Kenmore and Sears; multiple technicians have come out; parts on backorder with no ETA; have taken multiple days off of work to wait around for the technicians to show up; telling Sears you don't want to purchase any other service plan they try to sell you every time you call them because they are desperate to make money. I'm being told that to next available day for a technician to come out is Nov. 14th - yet the parts have not arrived and they cannot tell me when the parts will be available. Neither Sears nor Kenmore care about their customers!!! I purchased four Kenmore appliances from Sears at the same time when we remodeled our kitchen in 2015. This is not what I expected from Kenmore or Sears. Do not purchase a Kenmore, especially from Sears. I wish some someone (a smart lawyer, the state attorney general, Superman) did something about this - and at least get Sears or Kenmore to reimburse customers for multiple bags of ice purchased a week to keep the little amount of food you can in a small ice chest, all the "going-out to eat" money that has been spent because we cannot provide a meal for our families; and all the days off of work we have had to take. SOMEONE HELP US!!"

     d.    A February 20, 2018 consumer complaint states: "Kenmore Elite Refrigerator[.] Worst refrigerator ever!! Thought I was buying a real honest to goodness Kenmore product. Good old reliable Sears. That's a joke. It's an LG product with a Kenmore sticker on it. Purchased in 2015. Have had nothing but problems. Had a technician out at least 6

times for various problems. Warranty expires this June 2018. Wasn't cooling very well on this service call. Technician checks it out today, 2/19/18. Needs a new compressor, electrical board and filter dryer. Might be a month before I get the parts. Thank goodness I called before the warranty expired. Guess next time something fails my warranty will be expired and I'll just take it to the garbage dump. Decided to Google on this refrigerator and read lots of reviews, just today, on how many consumers have had problems with the Kenmore Elite compressor going bad and other multiple problems. As a matter of fact, the technician was going to his next call with the same exact model refrigerator I have and the same cooling problem. Technician stated he had replaced a lot of compressors in these refrigerators. LG needs to ante up and be responsible for all repairs and labor for their defective compressors, regardless of warranty or not. I will never make another purchase without checking out what consumers have to say about a product. Oh, and by the way, I think Consumer Reports gave this refrigerator high ratings back when I purchased it, as I am a subscriber to their magazine. Well, not good enough. Let one of them actually purchase one and put it in their house and lets see what happens in a month, 6 months or 1 year and see how they feel about the refrigerator then!!! Just wish me luck that it will last a while longer after repairs. And maybe I'll have enough time to save up money to purchase something else."

      e.    A July 16, 2018 consumer complaint states: "Sears Kenmore Elite Refrigator[.] I purchased a Kenmore Elite refrigerator in November of 2015. The compressor went out in October of 2017. We were left with over $300 worth of spoiled food that we were never compensated for, even though the extended warranty claims to cover lost food. It is now July 2018 and the refrigerator has gone out again! It's been 9 days since we called to put in a claim to have the refrigerator repaired and they have not sent out a tech who can diagnose the issue. We are now dealing with another refrigerator full of spoiled food! In talking with the tech

who came in 2017, he said that the Kenmore Elite refrigerators have had many issues with the compressors failing and that Kenmore and LG are aware of it! I've never paid as much for a refrigerator as I did for this one and I've never had any issues with any other refrigerator that I have ever owned but this one! THIS THING IS A LEMON! Kenmore/LG are aware of it and they need to replace these units!"

      f.    A December 19, 2018 consumer complaint states: "I bought a new Kenmore fridge April 2015 that cost approx. $1600 (before tax), and in December 2018 it stopped working with no warning. I noticed freezer began to defrost and the fridge was not cooling. I called Sears repair and it took them 2 weeks to come out. They came today and the tech said it was the compressor and that it will be $980 to fix and there is really only a 70% chance that it will be fixed... It will never be the same and probably not worth fixing. Needless to say I am so upset, we lost all our food. It's only been 3 years since I bought Kenmore fridge, I shouldn't be having this problem AT ALL!!! It shouldn't cost me anything."

      g.    An April 16, 2019 consumer complaint states: "We purchased a Kenmore Elite Grab and Go refrigerator from Sears in April of 2015. Last week our ice maker stopped working, and then a few days later the frig and freezer both stopped working. We contacted sears and was told that our warranty had expired. Sears scheduled a repair man to come out the following week, and offered us a warranty plan stating that we could pay $49 a month, with a $99 deductible, with parts covered and labor for up to $500. We accepted the plan. Even then because Sears does not do repairs on the weekend, therefore we had to spend $160 on a small freezer to salvage as much of our frozen food as possible. The following Monday we waited for the repair man for most of the day. Our appointment time was between 1pm and 5pm. The Sears repair man did not show up until around 6pm. He then informed us that our compressor was bad and that it would take a week for the repair work to be done. He then told us that we were

expected to pay $99 for the visit, plus $146 dollars because the repair job exceeded the $500 limit. This information was slightly different from what we had been told by the person who sold us the warranty plan. When we called back a different representative told us that Sears only covers up to $500 for the total repair job. When I complained about the misinformation the warranty person on the phone offered me $500 towards the purchase of a new refrigerator from Sears. Is he kidding. Our frig is only 4 years old! To add insult to injury, the repair person told us 'Your compressor is an LG compressor and these things are dropping like flies'. When I questioned him about the brand of the replacement part, he informed us that he would be replacing the compressor with another LG compressor. I have been on the phone with Sears several times the past few days complaining about my refrigerator not working. Twice the warranty person on the phone attempted to schedule a walk through to sell us a new AC unit. Yet its been a week and our refrigerator still does not work. In addition to a small freezer we had to go out last night to purchase a small refrigerator. I called the corporate office this morning and was sent back to the same customer service number. Its frustrating because the English of the people we spoke with is not very good. The agents sound very rehearsed and appear to experts at not solving your problems."

       h.    A December 13, 2019 consumer complaint states: "I purchased the Kenmore Elite refrigerator hoping that it was as durable as the one I had in the past. I was wrong and sadly disappointed in this product. The compressor went out in less than 2 years and the replacement cost is ridiculous. The compressor is still under warranty but the cost to have Sears repair it is absurd. They no longer honor their products and charge the consumer an exorbitant fee for the service call and then charge labor fees for repairing their defective appliance. Sears was at one time selling a product that was well worth purchasing but that is no longer true. Buyers beware! Research your appliances and do not buy from Sears or you may be in the same position I am in

now. I lost approximately $200.00 in food and I am stuck with the service fees as well. Never again will I shop at Sears!!"

      i.    A December 31, 2019 consumer complaint states: "Kenmore Elite Refrigerator Made by LG[.] Bought a Kenmore Elite Refrigerator approximately 2 years ago, Model: 795.74025.411. Paid over $3,000.00 for the refrigerator and now 2 years later the compressor is going bad. Repairman said this was a common problem with LG refrigerators and Kenmore Refrigerators made by LG. Estimated repair cost over $1,000.00!"

      j.    A June 5, 2020 consumer complaint states: "Just like all the stories before, we have a Kenmore Elite (made by LG) model 795.51863.611, purchase in 5/2018 and now the compressor is bad. I had a repair man out and I he said that even though the part will be covered (10 yr part warranty) the labor will not be and on average will be around $750. How is it justifiable to pay that amount of $$ for a 2 year old refrigerator but the other option is to trash it, so sad and pathetic. I will never buy anything from Sears ever again and I will be sure to tell anyone who listens what a piece of garbage the appliances are and how horrible Sears customer service is, they have been no help! This isn't right and I hoping they get sued big time."

      k.    An October 8, 2020 consumer complaint states: "I purchased a brand new Kenmore refrigerator 8/2018 and the compressor blew 9/27/2020. I called to set an appointment date for service and they failed to show. My appointments are now continuing to be rescheduled later and later in the month. This has changed every other day via text or automated calls from 10/6, to 10/7 to 10/19, to now 10/20! I have received no explanation as to why my appointments keep getting changed and no acknowledgment regarding a service request for a refrigerator which is an ESSENTIAL household item."

      l.    A November 14, 2021 consumer complaint states: "We purchased a Kenmore Elite refrigerator and it stopped cooling and we called Sears/Kenmore and they sent

multiple people on 4 different occasions to check it out and all said that it was the compressor and we still have warranty on it. To add insult to injury one of their affiliates by name Intelfix paid $100 deductible to them and still they have not fixed my appliance nor replace and whenever we call they will give us a run around. I can't believe we have all of our appliances from the scam of a company called Sears/Kenmore."

m.   A September 26, 2022 consumer complaint states: "We bought our LG refrigerator with linear compressor on September 5, 2017 and bought a 5 year protection plan from Home depot. The fridge is no longer cooling as of September 13, 2022. I called LG and they referred me to home depot and home depot says there's nothing they can do since my warranty has expired. Do any of you out there have a similar issue with LG compressors going bad after only 5 years? I have an old Maytag refrigerator that I am using as a spare in the back yard that is almost 17 years old. I will never buy an LG/Samsung appliances again. Or from home depot for that matter."

72.     Transformco would also have known about the high rate of failures in the Class Refrigerators and their linear compressors because it received warranty claims from many affected consumers. Moreover, when Transformco closed on the asset purchase agreement it would have had access to the records of past warranty claims on its corporate predecessor.

73.     LG would have known about the high rate of failures in the Class Refrigerators and their linear compressors because it also received warranty claims from many affected consumers, including those who purchased LG-branded refrigerators with the same defective linear compressors as the Class Refrigerators.

C.     **Defendants' Concealment of the Defect**

74.     Despite knowing about the linear compressor defect, Defendants continued manufacturing, advertising, warranting, distributing, and selling the defective linear compressor

3072935.8

and many of the Class Refrigerators without (a) warning consumers of the real possibility that the Class Refrigerators may be unable to store food at a safe temperature; (b) recalling the defective Class Refrigerators; (c) offering to repair the defective Class Refrigerators free of charge; and/or (d) refunding consumers any or all of the purchase price they paid for their Class Refrigerators.

75.     When Plaintiffs purchased their Class Refrigerators, Defendants failed to disclose to them that their Class Refrigerators contained a defective linear compressor that would likely fail well before the industry standard of at least 10 years, thereby causing their Class Refrigerators to run above the temperature required to safely store food and medicine.

76.     Defendants had a duty to disclose the above-described defect to Plaintiffs and the Proposed Class members, but failed to do so.

77.     Defendants' duty to disclose arose for several independent reasons. First, Defendants had superior knowledge of the defect for the reasons described above.

78.     Second, the linear compressor defect poses a material safety risk that always requires disclosure, because it threatens to deprive consumers of necessary food and increases the risk that consumers will ingest spoiled or otherwise unsafe food, which can cause illness.

79.     Third, Defendants' practice of disseminating misleading half-truths about the linear compressor and Class Refrigerators triggered a duty to disclose.

80.     Some representative examples of Transformco's misleading half-truths are collected in the subparagraphs below.

        a.     "Kenmore Elite 74022 French Door Bottom-Freezer Fridge—Keep Food Fresh and Accessible."

        b.     "From bags of fresh groceries to tons of Thanksgiving leftovers, the Kenmore Elite 74022 29.8 cu. ft. French Door Fridge has the flexible and spacious capacity you

need. Take advantage of the full-width pantry drawer to keep snacks, treats or party trays chilled and ready to eat."

c.     "Fresher Food Longer GeniusCool technology uses Digital Temperature Control, Multi Air Flow and electronic sensors to keep all of your foods fresh. The linear compressor adjusts to quick temperature changes and a CleanFlow Air filter circulate air through a charcoal filter to eliminate odors and help maintain freshness."

81.     Some representative examples of LG's misleading half-truths are collected in the subparagraphs below.

a.     "The LG Inverter Linear Compressor helps maintain the appearance and taste of fresh products for longer by reducing temperature fluctuations."

b.     "LG's Inverter Linear Compressor refrigerator has been named 'Best Refrigerator' by a number of consumer organizations and product reviewers world over for its excellent performance, consistent temperature controls and low noise level."

82.     These exemplar statements about Class Refrigerators and the linear compressors incorporated therein by Defendants are misleading half-truths because they misleadingly suggest that the Class Refrigerators and linear compressors are capable of properly cooling food. In truth, the Class Refrigerators and linear compressors routinely fail and stop cooling food properly well before the industry standard lifetime of 10 years. By affirmatively stating that the Class Refrigerators were capable of properly cooling food, Defendants triggered a duty to disclose the full truth about the linear compressor defect.

83.     Despite these duties to disclose, neither Defendants nor their predecessors, where relevant, disclosed to Plaintiffs or other Proposed Class members at the point of sale when they purchased their respective Class Refrigerators. Nor have they disclosed the defect to Plaintiffs or Proposed Class members since the time of purchase.

3072935.8

### D. **Warranties**

#### 1. **A merchantable refrigerator compressor has a lifetime of at least 10 years**

84. Defendants and, where relevant, their predecessors, are companies that deal in refrigerators and compressors, and are therefore merchants within the meaning of the Uniform Commercial Code.

85. Defendants and, where relevant, their predecessors, marketed, advertised, and represented that the Class Refrigerators were of merchantable quality and fit for their intended purpose.

86. Within the refrigeration industry, it is well understood that residential refrigerators should last for at least 10 years. The U.S. Department of Energy has published guidance to consumers confirming this. For example, a webpage on its website states: When you're shopping for appliances, think of two price tags. The first one covers the purchase price -- think of it as a down payment. The second price tag is the cost of operating the appliance during its lifetime. You'll be paying on that second price tag every month with your utility bill for the next 10 to 20 years, depending on the appliance. *Refrigerators last an average of 12 years* . . . ."[5]

87. Sears Home Services' website (which is currently owned by Transform SR Brands LLC) states on a "How long do appliances usually last" webpage: "A refrigerator should

---

[5] *Shopping for Appliances and Electronics*, U.S. ENERGY DEP'T, https://www.energy.gov/energysaver/shopping-appliances-and-electronics (last visited Oct. 2, 2024).

3072935.8

last 10-13 years."[6] An archived version of this same webpage from 2017 contains similar language: "Washers, dryers, refrigerators, and dishwashers typically last 10-13 years."[7]

88.     Sears Home Services' website similarly states on a "How long do appliances usually last" webpage: "On average, refrigerators last for about 12 to 15 years."[8] An archived version of this same webpuage from 2021 contains similar language: "How long can you expect your refrigerator to keep working? The short answer is 12 to 15 years, on average."[9]

89.     These statements on the Sears Home Services confirm that the industry standard is for residential refrigerators to last for at least 10 years.

90.     Because the industry standard lifetime of refrigerators is at least 10 years, a refrigerator is not fit for its ordinary use if it has a compressor that routinely fails well before the ten-year mark. The ten-year duration of Transformco's warranty for its linear compressors confirms this industry standard. The implied warranty of merchantability therefore required the Class Refrigerators to meet this industry standard of ordinary use.

---

[6] Lyle Weischwill, *How Long Do Appliances Usually Last?*, SEARS HOME SERVICES (Mar. 8, 2024) https://www.searshomeservices.com/blog/how-long-do-appliances-usually-last.
[7] *How Long Do Appliances Usually Last?*, SEARS HOME SERVICES (https://www.searshomeservices.com/blog/how-long-do-appliances-usually-last) [https://web.archive.org/web/20170705154404/https://www.searshomeservices.com/blog/how-long-do-appliances-usually-last] (last visited Oct. 2, 2024).
[8] Erin Hynes, *How Long Do Refrigerator's Last?*, SEARS HOME SERVICES (Mar. 19, 2024) https://www.searshomeservices.com/blog/how-long-do-refrigerators-last.
[9] *How Long Do Refrigerators Last?*, SEARS HOME SERVICES (https://www.searshomeservices.com/blog/how-long-do-refrigerators-last) [https://web.archive.org/web/20211021013123/https://www.searshomeservices.com/blog/how-long-do-refrigerators-last] (last visited Oct. 2, 2024).

3072935.8

## 2. Boilerplate in user manuals does not limit the implied warranty of merchantability to less than 10 years

91. For several years, Transformco and its corporate predecessor have had a deceptive and unfair practice of not disclosing at the point of sale a set of written disclaimers, limitations, and exclusions to consumers that Transformco claims will limit its warranty obligation liabilities. Instead, Transformco and its corporate predecessor bury these purported limitations in a lengthy "use and care" manual that comes when the refrigerator is delivered, well after the purchase has occurred. The cover page of the manual does not state that any contractual terms are contained inside, and the vast majority of the information in the manual does not relate to contractual terms at all. Instead, the manual largely concerns technical information about the refrigerators. Consumers are therefore not given reasonable notice of the purported written disclaimers, limitations, and exclusions of Transformco's warranty obligations.

92. The written disclaimers, limitations, and exclusions contained in Transformco's "use and care" manuals for the Class Refrigerators are not enforceable for several independent reasons.

a. First, they are not part of the agreement formed at the point of purchase, and are not reasonably presented to the consumer for acceptance. The page in the "use and care" manual with the relevant language—if seen by consumers at all—provides no instructions on how a consumer can opt out of or negotiate the warranties, and the refrigerator will typically have been installed by the time the consumer has a reasonable opportunity to read the manual. For these reasons, Transformco never actually reaches an agreement with consumers concerning its purported warranty limitations.

b. Independent of this failing, any effort to limit the duration of implied warranties for the Class Refrigerators to one year in duration is separately unenforceable because

that lifetime is not a "reasonable duration" for a refrigerator under 15 U.S.C. §2308(b), given the industry standard of at least a ten-year lifetime for refrigerators and compressors.

c.      Furthermore, any effort to limit the duration of implied warranties for the Class Refrigerators to one year in duration is separately unenforceable because Transformco did not prominently display that limitation as required by 15 U.S.C. §2308(b) and instead buried its warranty limitations in a manual provided after the point of sale.

d.      Moreover, under federal law, any manufacturer or seller making a product available to customers, whether directly or indirectly, cannot disclaim implied warranties of merchantability and fitness for a particular purpose where that manufacturer has made an express warranty. Accordingly, such implied warranties apply to Class Refrigerators sold to Plaintiffs and all Proposed Class members. Any language limiting implied warranties to a duration that is shorter than the longest of either the express warranty applicable to the linear compressor or the express warranty applicable to the Class Refrigerator is unenforceable under 15 U.S.C. §2308(b).

e.      Finally, any effort to limit the duration of, or remedies under, implied warranties for the Class Refrigerators is unenforceable because it is unconscionable for Transformco to seek to impose such limitations when it knew the defective linear compressors in Class Refrigerators routinely fail well before the industry standard of 10 years and because, as explained above, the purported warranty limitations were buried in a user manual separate from the other important contract terms that were shown to the consumer at the point of sale. Contract terms shown to consumers at the point of sale include terms like the purchase price and delivery date.

III.    **PLAINTIFFS' CLASS REFRIGERATORS**

      A.     **Plaintiff Grotte's Class Refrigerator**

      93.     Plaintiff Grotte purchased his Class Refrigerator (Model Number: 795.73167.610) in mid- to late-2019 from a Sears store in Texas.

      94.     The "use and care" manual provided to Plaintiff Grotte with his Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

      95.     None of the information presented by Transformco or its sales representatives to Mr. Grotte at the point of sale disclosed that the linear compressor in his Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Mr. Grotte to identify the defect himself.

      96.     Mr. Grotte used the Class Refrigerator solely for its intended purpose as a personal home appliance.

      97.     In or around April 2024, the linear compressor in Plaintiff Grotte's refrigerator failed.

      98.     Plaintiff Grotte attempted to arrange for a Tranformco-authorized technician to inspect the refrigerator shortly thereafter but Transformco informed him that there were no authorized repair technicians available in his area. Plaintiff Grotte thereafter retained an independent technician who found that the linear compressor had failed. The technician replaced the linear compressor, charging Mr. Grotte over $1,100.

      99.     In violation of his express warranty, Transformco failed service, repair, or replace Plaintiff Grotte's linear compressor even though the compressor was warrantied for 10 years.

100. During the period when Mr. Grotte's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, he was been unable to use his Class Refrigerator for its intended purpose.

**B.      Plaintiff Albertelli's Class Refrigerator**

101. Plaintiff Albertelli purchased her Class Refrigerator (Model Number: 795.51833.413) online from Sears on June 9, 2019. The refrigerator cost Ms. Albertelli $1,255.62.

102. The "use and care" manual provided to Plaintiff Albertelli with her Class Refrigerator includes a one-year express warranty for the Class Refrigerator.

103. None of the information presented by Transformco or its sales representatives to Ms. Albertelli at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Albertelli to identify the defect herself.

104. Ms. Albertelli used the Class Refrigerator solely for its intended purpose as a personal home appliance.

105. In or around September 2023, Ms. Albertelli's Class Refrigerator stopped cooling.

106. Plaintiff Albertelli attempted to arrange for a Tranformco-authorized technician to inspect the refrigerator shortly thereafter but Transformco informed her that there were no authorized repair technicians available in her area for weeks. Plaintiff Albertelli thereafter retained an independent technician.

107. The independent technician who evaluated Ms. Albertelli's Class Refrigerator noted the linear compressor had failed and provided Ms. Albertelli with a quote of over $1,000 to replace the compressor. The technician recommended that Ms. Albertelli replace her refrigerator

rather than proceed with the repair. Ms. Albertelli declined to replace the compressor and paid $120 for the technician's assessment.

108.    Since Ms. Albertelli's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, she has been unable to use the Class Refrigerator for its intended purpose.

     **C.**      **Plaintiff Edwards' Class Refrigerator**

109.    Plaintiff Edwards purchased her Class Refrigerator (Model Number: 795.72489.412) at a Sears store in California on December 16, 2019. The refrigerator cost Ms. Edwards $2,646.10.

110.    The "use and care" manual provided to Plaintiff Edwards with her Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

111.    None of the information presented by Transformco or its sales representatives to Ms. Edwards at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Edwards to identify the defect herself.

112.    Ms. Edwards used the Class Refrigerator solely for its intended purpose as a personal home appliance.

113.    In or around July 2023, Ms. Edwards' Class Refrigerator stopped cooling sufficiently. Ms. Edwards' requested a service visit from Transformco and a Transformco-authorized technician conducted such a visit on July 5, 2023. The technician evaluated the refrigerator and replaced its icemaker and fan. The problem, however, persisted and a second

technician replaced the refrigerator fan again shortly thereafter. Combined, these repairs cost Ms. Edwards around $1,000.

114.    Despite these replacements, Ms. Edwards' refrigerator still failed to cool sufficiently. In response to Ms. Edwards' continuing complaints, Transformco replaced the refrigerator's linear compressor on March 19, 2024. While Ms. Edwards was not charged for the cost of the new compressor, Transformco charged her $587.29 for labor and other necessary parts. Despite this new compressor, Ms. Edwards' Class Refrigerator has continued to fail to maintain a cold and stable temperature.

115.    Since Ms. Edwards' Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, she has been unable to use the Class Refrigerator for its intended purpose.

### D.    Plaintiff Fjelstad's Class Refrigerator

116.    Plaintiff Fjelstad purchased her Class Refrigerator (Model Number: 795.72595.710) on March 25, 2019 from a Sears store in Jacksonville, Florida. The refrigerator cost Ms. Fjelstad $1,827.98.

117.    The "use and care" manual provided to Plaintiff Fjelstad with her Class Refrigerator includes a one-year express warranty for the Class Refrigerator.

118.    None of the information presented by Transformco or its sales representatives to Ms. Fjelstad at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Fjelstad to identify the defect herself.

119.    Ms. Fjelstad used the Class Refrigerator solely for its intended purpose as a personal home appliance.

120.     In or around July 2023, the linear compressor in Plaintiff Fjelstad's refrigerator failed. Ms. Fjelstad subsequently retained an independent technician to assess her refrigerator. The technician noted that the linear compressor had failed and provided Ms. Fjelstad with a quote of approximately $1,200 to replace the compressor. Ms. Fjelstad declined to replace the compressor but paid $69.95 for that assessment.

121.     Ms. Fjelstad attempted to have Sears Home Services diagnose the cooling problems with her Kenmore refrigerator but cancelled when Sears Home Services could not perform a service inspection until August 9, 2023.

122.     Since Ms. Fjelstad Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, she has been unable to use the Class Refrigerator for its intended purpose and was forced to purchase a replacement refrigerator

**E.     Plaintiffs Theodore and Theresa Fussner's Class Refrigerator**

123.     Plaintiffs Theodore and Theresa Fussner purchased their Class Refrigerator (Model Number: 795.51833.413) on August 30, 2019 from a Sears Outlet store in Huber Heights, Ohio. The refrigerator cost $2,199.99. After applicable discounts, they paid $957.81.

124.     Plaintiffs Theodore and Theresa Fussner applied a credit of $1,210.00 to purchase the Class Refrigerator. This credit was fungible and could have been put toward any other product available at Sears.

125.     The "use and care" manual provided to Plaintiffs Theodore and Theresa Fussner with their Class Refrigerator includes a one-year express warranty for the Class Refrigerator.

126.     None of the information presented by Transformco or its sales representatives to Plaintiffs Theodore and Theresa Fussner at the point of sale disclosed that the linear compressor in their Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail

prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for them to identify the defect themselves.

127.    Plaintiffs Theodore and Theresa Fussner used their Class Refrigerator solely for its intended purpose as a personal home appliance.

128.    In or around March 2023, Plaintiffs Theodore and Theresa Fussner's refrigerator failed.

129.    Plaintiffs Theodore and Theresa Fussner arranged for two technicians to inspect the refrigerator shortly thereafter. First, an independent technician assessed their refrigerator and concluded "the compressor is bad." That technician charged Plaintiffs Theodore and Theresa Fussner for the service visit and quoted them a cost of over $1,200 to repair the refrigerator. The Fussner's subsequently arranged for a Sears Home Services technician to diagnose the refrigerator. That Sears Home Services technician—who evaluated the refrigerator on March 30, 2023—arrived at the same conclusion, charging $105.93 for the service visit and reporting that the necessary compressor replacement would cost $1,199.66

130.    Since Plaintiffs Theodore and Theresa Fussner's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, they have been unable to use the Class Refrigerator for its intended purpose and were forced to purchase a replacement refrigerator

### F.    Plaintiff Hartman's Class Refrigerator

131.    Plaintiff Hartman purchased her Class Refrigerator (Model Number: 795.73165.610) on August 25, 2019 from a Sears store in Whitehall, Pennsylvania. The refrigerator cost Ms. Hartman $2,269.59.

132.    The "use and care" manual provided to Plaintiff Hartman with her Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

133.    None of the information presented by Transformco or its sales representatives to Ms. Hartman at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Hartman to identify the defect herself.

134.    Ms. Hartman used the Class Refrigerator solely for its intended purpose as a personal home appliance.

135.    In or around June 2024, the linear compressor in Plaintiff Hartman's refrigerator failed.

136.    Plaintiff Hartman arranged for a Tranformco-authorized technician to inspect the refrigerator shortly thereafter. The technician noted that the linear compressor had failed and provided Ms. Hartman with a quote of over $500 to replace the compressor. Ms. Hartman declined to replace the compressor but paid $126.14 for that assessment.

137.    Since Ms. Hartman Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, she has been unable to use the Class Refrigerator for its intended purpose.

**G.      Plaintiff Lloyd's Class Refrigerator**

138.    Plaintiff Lloyd received her Class Refrigerator (Model Number: 795.74113.710) in mid-2019 as a warranty replacement for a previous LG refrigerator that stopped cooling.

139.     The "use and care" manual provided to Plaintiff Lloyd with her Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

140.     None of the information presented by Transformco or its sales representatives to Ms. Lloyd at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Lloyd to identify the defect herself.

141.     Ms. Lloyd used the Class Refrigerator solely for its intended purpose as a personal home appliance.

142.     In or around June 2022, the linear compressor in Plaintiff Lloyd's refrigerator failed.

143.     Plaintiff Lloyd arranged for a Tranformco-authorized technician to inspect the refrigerator on July 7, 2022. After his inspection, the technician concluded that the linear compressor had failed and charged Ms. Lloyd $768.67 to replace the linear compressor.

144.     During the period when Ms. Lloyd's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, she was unable to use her Class Refrigerator for its intended purpose.

    **H.**    **Plaintiff Meyer's Class Refrigerator**

145.     Plaintiff Meyer purchased her Class Refrigerator (Model Number: 795.74039.412) in 2017 from a Sears store in Massachusetts.

146.     The "use and care" manual provided to Plaintiff Meyer with her Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

3072935.8

147.    None of the information presented by Transformco or its sales representatives to Ms. Meyer at the point of sale disclosed that the linear compressor in her Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Ms. Meyer to identify the defect herself.

148.    Ms. Meyer used the Class Refrigerator solely for its intended purpose as a personal home appliance.

149.    In or around August 2024, the linear compressor in Plaintiff Meyer's refrigerator failed.

150.    Plaintiff Meyer arranged for Sears Home Services technician to diagnose the refrigerator shortly thereafter. That technician determined that the linear compressor had failed and provided Ms. Meyer with a quote of approximately $1,350 to replace the compressor. Ms. Meyer declined to replace the compressor but paid $119 for that assessment.

151.    In violation of her express warranty, the repair estimate provided to Plaintiff Meyer by Sears Home Services included a charge to purchase a replacement compressor, even though the compressor was warrantied for 10 years.

152.    Since Ms. Meyer's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, she has been unable to use the Class Refrigerator for its intended purpose and was forced to purchase a replacement refrigerator.

I.    **Plaintiff Peios' Class Refrigerator**

153.    Plaintiff Peios purchased his Class Refrigerator (Model Number: 795.72483.411) at a Sears store in Dewitt, New York on July 8, 2016. The refrigerator cost Mr. Peios $2,499.99.

3072935.8

154. The "use and care" manual provided to Plaintiff Peios with his Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

155. None of the information presented by Transformco or its sales representatives to Mr. Peios at the point of sale disclosed that the linear compressor in his Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Mr. Peios to identify the defect himself.

156. Mr. Peios used the Class Refrigerator solely for its intended purpose as a personal home appliance.

157. Since Mr. Peios purchased his Class Refrigerator, the linear compressor has failed three times and Mr. Peios has paid to replace it twice. The linear compressor first failed in or around August 2018 and Mr. Peios paid $106.92 for a Transformco-authorized technician to replace it. That linear compressor failed in or around November 2020 and Mr. Peios again paid $449.17 to have it replaced yet again by a Sears-authorized technician. After that linear compressor failed, in or around November 2022. Mr. Peios paid a Transformco-authorized technician $136.03 for another service visit but declined the repair the technician proposed, which would have cost $2,238.09.

158. In violation of his express warranty, the repair estimate provided to Mr. Peios by Sears Home Services included a charge to purchase a replacement compressor, even though the compressor was warrantied for 10 years.

159. Mr. Peios estimates he lost approximately $500 worth of food each time his Class Refrigerator failed.

160.    Since Mr. Peios' Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, he has been unable to use the Class Refrigerator for its intended purpose.

**J.    Plaintiff Stewart's Class Refrigerator**

161.    Plaintiff Stewart received his Class Refrigerator (Model Number: 795.72483.411) from Sears on March 5, 2019 as a warranty replacement for a previous Kenmore Elite refrigerator that stopped cooling.

162.    The "use and care" manual provided to Plaintiff Stewart with his Class Refrigerator includes a one-year express warranty for the Class Refrigerator and a 10-year warranty for the linear compressor.

163.    None of the information presented by Transformco or its sales representatives to Mr. Stewart upon receipt disclosed that the linear compressor in his Class Refrigerator had a defect that would likely cause the Class Refrigerator to fail prematurely. Given the hidden and technical nature of the compressor defect, it was not reasonably possible for Mr. Stewart to identify the defect himself.

164.    Mr. Stewart used the Class Refrigerator solely for its intended purpose as a personal home appliance.

165.    In or around May 2024, the linear compressor in Plaintiff Stewart's refrigerator failed.

166.    Plaintiff Stewart arranged for a Tranformco-authorized technician to inspect the refrigerator shortly thereafter. The technician noted that the linear compressor had failed and provided Mr. Stewart with a quote of over $1,000 to replace the compressor. Mr. Stewart declined to replace the compressor but paid $129.59 for that assessment.

3072935.8

167.    Upon information and belief, in violation of his express warranty, the repair estimate provided to Mr. Stewart included a charge to purchase a replacement compressor, even though the compressor was warrantied for 10 years.

168.    Since Mr. Stewart's Class Refrigerator stopped cooling to the required temperature to store food and other consumable goods safely, he has been unable to use the Class Refrigerator for its intended purpose.

## IV.    INJURIES AND RISK OF IMMINENT HARM TO PLAINTIFFS

169.    Plaintiffs and the other Proposed Class members purchased their Class Refrigerators solely for their personal, residential purposes and only used the Class Refrigerators as intended.

170.    The Class Refrigerators are defective because they contain defective linear compressors, which fail and cause the Class Refrigerator to run above the temperature required to store food and other consumable goods safely.

171.    In light of this defect, Plaintiffs and other Proposed Class members paid far more than the reasonable value of the Class Refrigerators, and would not have paid such had the defect described above been disclosed by Defendants.

172.    Plaintiffs also lost valuable food as a result of the premature failure of their Class Refrigerators.

173.    Defendants have profited and continue to profit from the sale of defective Class Refrigerators by failing to disclose the above described defect and continuing to sell and distribute the Class Refrigerators at prices well above their reasonable value.

174.    As a direct and proximate result of the false warranties, misrepresentations, and failure to disclose the defect inherent in these Class Refrigerators by Defendants, and, where

relevant, their predecessors, Plaintiffs and the Proposed Class members purchased the Class Refrigerators and have suffered injury as a result.

175.    As a direct and proximate result of Defendants' concealment of the defect, failure to warn customers of the defect and the safety risks posed by the Class Refrigerators, and failure to remove the defective Class Refrigerators from consumers' homes or otherwise remedy the defect, Plaintiffs and Proposed Class members purchased the defective and unsafe Class Refrigerators and in many cases use them in their homes to this day.

176.    Had Plaintiffs and Proposed Class members known of this serious safety risk, they would not have purchased the Class Refrigerators, would have paid substantially less for their Class Refrigerators than they paid, and/or would have removed them from their homes before their linear compressors failed.

## CLASS ALLEGATIONS

177.    Pursuant to Federal Rule of Civil Procedure 23(a) and 23(b)(3), Plaintiffs bring this action on behalf of themselves and all other persons similarly situated. In particular, they seek to represent the following class under Illinois law:

> **Nationwide Class:** All residents of the United States and its territories who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

In the alternative, Plaintiffs propose the following State Sub-Classes for any claim that cannot be certified on a nationwide basis under Illinois law:

> **California and Substantially Similar States Class**: All residents of California and any state with materially similar law to any certified claim under California law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

> **Florida and Substantially Similar States Class**: All residents of Florida and any state with materially similar law to any certified claim under Florida law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

3072935.8

**Illinois and Substantially Similar States Class**: All residents of Illinois and any state with materially similar law to any certified claim under Illinois law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

**Massachusetts and Substantially Similar States Class**: All residents of Massachusetts and any state with materially similar law to any certified claim under Massachusetts law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

**New York and Substantially Similar States Class**: All residents of New York and any state with materially similar law to any certified claim under New York law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

**Ohio and Substantially Similar States Class**: All residents of Ohio and any state with materially similar law to any certified claim under Ohio law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the Cristofoletti Action.

**Pennsylvania and Substantially Similar States Class:** All residents of Pennsylvania and any state with materially similar law to any certified claim under Pennsylvania law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

**Texas and Substantially Similar States Class**: All residents of Texas and any state with materially similar law to any certified claim under Texas law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

**Washington and Substantially Similar States Class**: All residents of Washington and any state with materially similar law to any certified claim under Washington law who, for household use and not for resale, bought or otherwise acquired a Class Refrigerator within 10 years from the date of the filing of the *Cristofoletti* Action.

Excluded from the above Nationwide Class and State Sub-Classes (collectively, the "Classes") are: Defendants, their officers, directors, and employees; entities in which Defendants have a controlling interest or which have a controlling interest in Defendants, and those entities' officers, directors, and employees; the judge assigned to this case and his immediate family; all

3072935.8

expert witnesses in this case; and, all persons who make a timely election to be excluded from the Classes.

178.    Plaintiff Edwards is the proposed representative for the California and Substantially Similar States Class.

179.    Plaintiff Fjelstad is the proposed representative for the Florida and Substantially Similar States Class.

180.    Plaintiff Lloyd is the proposed representative for the Illinois and Substantially Similar States Class.

181.    Plaintiff Meyer is the proposed representative for the Massachusetts and Substantially Similar States Class.

182.    Plaintiff Peios is the proposed representative for the New York and Substantially Similar States Class.

183.    Plaintiffs Fussner are the proposed representatives for the Ohio and Substantially Similar States Class.

184.    Plaintiffs Albertelli and Hartman are the proposed representatives for the Pennsylvania and Substantially Similar States Class.

185.    Plaintiff Grotte is the proposed representative for the Texas and Substantially Similar States Class.

186.    Plaintiff Stewart is the proposed representative for the Washington and Substantially Similar States Class.

## I.      THE PROPOSED CLASSES MEET THE PREREQUISITES OF RULE 23(a)

187.    Numerosity. Upon information and belief, the Proposed Classes include many thousands of individuals, and, thus, is so numerous that joinder of all members would be impracticable. Transformco and its corporate predecessor have issued warranties for millions of

Class Refrigerators, and since February 11, 2019, Transformco has sold the Class Refrigerators and assumed the warranty obligations for the Class Refrigerators sold before that date.

188. <u>Commonality.</u> The answers to questions common to the Classes will drive the resolution of this litigation. Specifically, resolution of this case will be driven by questions relating to the Class Refrigerators' common design, whether the design is defective, whether the defective design poses a safety risk, Defendants' knowledge of the defect, the uniform diminution in value of the Class Refrigerators, and the corresponding unjust enrichment to Defendants. The common questions of law and fact include, but are not limited to, the following:

       a.    whether the Class Refrigerators pose unreasonable safety risks to consumers;

       b.    whether Defendants knew, or should have known, that the products they sold into the stream of commerce pose unreasonable safety risks to consumers;

       c.    whether Defendants concealed the safety risks their Class Refrigerators pose to consumers;

       d.    whether the safety risks the Class Refrigerators pose to consumers constitute material facts that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

       e.    whether the Class Refrigerators possess a material defect;

       f.    whether Defendants knew or should have known of the inherent defect in the Class Refrigerators when they placed them into the stream of commerce;

       g.    whether Defendants concealed the defect from consumers;

       h.    whether the existence of the defect is a material fact that reasonable purchasers would have considered in deciding whether to purchase a refrigerator;

       i.    whether the Class Refrigerators are merchantable; and

j.    whether any false warranties and material omissions by Defendants concerning their defective Class Refrigerators caused Proposed Class members' injuries.

189.    <u>Typicality.</u> Plaintiffs have the same interests as all members of the Classes they seeks to represent, and all of Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the classes. Plaintiffs and all Proposed Class members own or owned a Class Refrigerator that contains a linear compressor with a uniform defect that causes the Class Refrigerators to fail within their expected useful lives. All of the claims of Plaintiffs and Proposed Class members arise out of Defendants' placement of a product into the marketplace they knew was defective and posed safety risks to consumers, and from Defendants' failure to disclose the known safety risks and defect. Also common to Plaintiffs' and Proposed Class members' claims are:

a.    Plaintiffs' and Proposed Class members' purchase of the defective Class Refrigerators;

b.    LG's conduct in designing, manufacturing, distributing, and selling the defective linear compressors;

c.    Transformco's conduct in marketing, advertising, distributing, warranting, selling, and servicing the defective Class Refrigerators;

d.    Defendants' conduct in concealing the defect in the Class Refrigerators and the linear compressors incorporated therein.

190.    <u>Adequacy.</u> Plaintiffs will fairly and adequately represent and protect the interest of the Proposed Class members: Plaintiffs' interests align with those of the Proposed Class members, and Plaintiffs have no fundamental conflicts with the Class. Plaintiffs have retained counsel competent and experienced in products liability, consumer protection, and class action litigation, who will fairly and adequately represent the Class.

3072935.8

## II.    THE PROPOSED CLASSES MEET THE PREREQUISITES OF RULE 23(b)(3) AND RULE 23(c)(4)

191.    Predominance and Superiority. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the Class. A class action is superior to other methods for the fair and efficient adjudication of this controversy, as joinder of all members is impracticable. Defendants acted in a uniform manner with respect to the Plaintiffs and Proposed Class members.

192.    Defendants are sophisticated parties with substantial resources, while Proposed Class members are not, and prosecution of this litigation is likely to be expensive. Because the economic damages suffered by any individual Proposed Class member may be relatively modest compared to the expense and burden of individual litigation, it would be impracticable for Proposed Class members to seek redress individually for Defendants' wrongful conduct as alleged herein.

193.    The concealed safety risks described above counsel in favor of swiftly and efficiently managing this case as a class action, which preserves judicial resources and minimizes the possibility of serial or inconsistent adjudications.

194.    Plaintiffs and Proposed Class members have all suffered and will continue to suffer harm and damages as a result of Defendants' unlawful and wrongful conduct. Absent a class action, Proposed Class members will continue to suffer the undisclosed risk of linear compressor failure and incur monetary damages, and Defendants' misconduct will continue without remedy. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

195.    There will be no undue difficulty in the management of this litigation as a class action.

196.    Alternatively, certification may be appropriate as to individual issues as those issues will raise common questions applicable to all Proposed Class members and materially advance the litigation.

## III.    THE PROPOSED CLASSES ARE ASCERTAINABLE

197.    The Classes are defined by reference to objective criteria and there is an administratively feasible mechanism to determine who fits within the Classes. The Classes consists of purchasers and owners of Class Refrigerators, and class membership can be determined using receipts, photographs, ownership documentation, and records in Defendants' and other databases.

## FRAUDULENT CONCEALMENT AND DISCOVERY RULE TOLLING

198.    Insofar as Defendants raise the statute of limitations as a defense to Plaintiffs' claims or the claims of absent class members, Defendants cannot curtail the duration of the applicable express or implied warranties pled above, particularly durations established by federal statute. Moreover, claims for the recovery of out-of-pocket losses resulting from a Class Refrigerator's failure to cool within a warranty period should accrue from the date of those losses, not the date of purchase.

199.    The statute of limitation is also tolled by several prior putative class action litigations concerning the at-issue linear compressors and/or Class Refrigerators. For example, one such lawsuit was filed on June 7, 2019 in the District of New Jersey. *See* No. 2:19-cv-13554 (D.N.J. 2019). Another such lawsuit was filed on December 5, 2022 in the Central District of California. *See Hernandez v. LG Electronics USA, Inc.*, No. 22-cv-08813 (C.D. Cal. 2022). The related *Cristofoletti* matter was filed shortly thereafter and has been pending since that time. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974).

200. Throughout the Class Period, Defendants affirmatively concealed from Plaintiffs and Class members the defects described herein.

201. Defendants had a duty to inform Plaintiffs and Class members of the defects described herein, which Defendants knew of or should have known. Notwithstanding this duty, Defendants never disclosed the defects to Plaintiffs or Class members, and wrongly denied warranty claims in furtherance of their fraud.

202. Despite exercising reasonable diligence, Plaintiffs and Class members could not have discovered the defects or Defendants' scheme to avoid disclosure of the defect. Thus, the statute of limitations has been tolled with respect to any claims Plaintiffs or Class members have brought or could have brought.

203. Defendants are further estopped from asserting any statute of limitations defense, contractual or otherwise, to the claims alleged herein by virtue of their acts of fraudulent concealment.

**TRANSFORM SR AND TRANSFORM SR BRANDS DEFINED BELOW TO INCULDE PREDECESSOR ENTITIES**

204. All further references to the conduct of Transform SR and Transform SR Brands specifically incorporate the conduct of their predecessor entities.

**FIRST CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**
**Against Transform SR Brands**

205. Plaintiffs Grotte, Meyer, Peios, and Stewart re-allege and incorporate the preceding paragraphs as if fully set forth herein.

206. Plaintiffs Grotte, Meyer, Peios, and Stewart bring this action on behalf of themselves and the Proposed Nationwide Class against Transform SR Brands. In the alternative, they assert this on behalf of the Massachusetts, New York, Texas, and Washington Sub-Classes.

207.    Plaintiffs Grotte, Meyer, Peios, Stewart, and the Proposed Class members are "buyers" within the meaning of the Uniform Commercial Code (*e.g.*, 810 Ill. Comp. Stat. 5/2-313(a)) and Transform SR Brands is a "seller" within the meaning of the Uniform Commercial Code (*e.g.*, 810 Ill. Comp. Stat. 5/2-313).

208.    The Class Refrigerators are "goods" within the meaning of the Uniform Commercial Code (*e.g.*, 810 Ill. Comp. Stat. 5/2-313).

209.    Transform SR Brands provided Plaintiffs Grotte, Meyer, Peios, Stewart, and the Proposed Class members with "written warranties," as that term is defined by 15 U.S.C. § 2301(6). Transform SR Brands expressly warranted in writing that, "FOR TEN YEARS from the date of sale, the linear compressors of [the Class Refrigerators are] warranted against defects in material or workmanship. If a system part is defective within the first year, a new part will be supplied and installed at no charge. If a system part is defective after the first year, a new part will be supplied but not installed at no charge."

210.    In its capacity as warrantor, and by the conduct described herein, any attempts by Transform SR Brands to limit the express warranties in a manner that would exclude coverage of the defective linear compressor is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective linear compressor is null and void.

211.    All jurisdictional prerequisites have been satisfied.

212.    In its warranty to customers, Transform SR Brands also warrants in writing that it provides a one-year warranty against defects in material and workmanship and a five-year warranty against defects in the sealed system.

213.    Plaintiffs Grotte, Meyer, Peios, Stewart, and the Proposed Class members reasonably relied upon Transform SR Brands' representations in deciding to purchase the Class Refrigerators.

3072935.8

214. The Class Refrigerators fail to conform to Transform SR Brands' express representations insofar as they contain a defective linear compressor.

215. By selling Class Refrigerators containing a defective linear compressor to consumers like Plaintiffs Grotte, Meyer, Peios, Stewart, and the Proposed Class members after it gained knowledge of the Defect, Transform SR Brands breached its express warranty to provide refrigerators that were free from defect.

216. Transform SR Brands also breached its express warranty to repair and correct material defects or component malfunctions in the Class Refrigerators when it failed to do so, despite knowledge of the linear compressor defect and despite knowledge of alternative designs, alternative materials, and options for retrofits.

217. Transform SR Brands has not made repairs correcting the defective linear compressors in the Class Refrigerators, including the Refrigerators of Plaintiffs Grotte, Meyer, Peios, and Stewart.

218. The limited warranty of repair for the Class Refrigerators fails in its essential purpose because the contractual remedy is insufficient to make Plaintiffs Grotte, Meyer, Peios, Stewart, and the Proposed Class members whole. It also fails because Transform SR Brands has refused to provide the promised remedies within a reasonable time. Plaintiffs Grotte, Meyer, Peios, and Stewart and Proposed Class members are thus not limited to the limited warranty of "repair," and they seek all remedies allowed by law.

219. All purported limitations on Transform SR Brands' written warranty are ineffective because it would be unconscionable to enforce them for the reasons described in this complaint. Among other things, at the time Transform SR Brands warranted and sold the Class Refrigerators, it knew that the Class Refrigerators did not conform to the warranties and were

-47-

inherently defective, and Transform SR Brands wrongfully and fraudulently misrepresented and concealed material facts regarding the Class Refrigerators.

220.    Transform SR Brands knew that the Class Refrigerators of Plaintiffs Grotte, Meyer, Peios, and Stewart malfunctioned but failed to provide defect-free Class Refrigerators to them or Proposed Class members free of charge when their Class Refrigerators failed or to provide an adequate retrofit to repair the Class Refrigerators.

221.    Transform SR Brands was provided with notice and has been on notice of the defective linear compressor and of its breach of express written warranties through its own internal and external testing as well as hundreds or thousands of consumer warranty claims and customer complaints reporting malfunctions in the Class Refrigerators—including, on information and belief, claims and complaints sent by members of the Proposed Classes—yet it failed to repair, replace, or retrofit the Class Refrigerators to ensure they were free of material defects or component malfunctions as Transform SR Brands promised.

222.    Transform SR Brands was also provided with notice by Plaintiffs Grotte, Meyer, Peios, and Stewart when they called Transformco and attempted to arrange for authorized technicians to inspect their Class Refrigerators. Despite the express warranty covering defects in the material or workmanship of the linear compressor in Plaintiffs Class Refrigerators, Transformco did not offer and/or pay for the necessary repair or the replacement parts.

223.    Transform SR Brands' conduct as described herein, including Transform SR Brands' knowledge of the defective linear compressors and its action, and inaction, in the face of that knowledge, fails to comply with its obligations under its written and implied promises, warranties, and representations.

224.    Transform SR Brands' breach of express warranties violates the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

-48-

225. As a direct and proximate result of Transform SR Brands' breach of its express warranty, Plaintiffs Grotte, Meyer, Peios, Stewart, and Proposed Class members have suffered damages.

226. Transform SR Brands' breach of its express warranties damaged Plaintiffs Grotte, Meyer, Peios, Stewart, and Proposed Class members in an amount to be proven at trial.

227. As a result of Transform SR Brands' breach of express warranties, Plaintiffs Grotte, Meyer, Peios, Stewart, and Proposed Class members are entitled to revoke their acceptance of the Class Refrigerators, obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

**SECOND CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**Against all Defendants**

228. Plaintiffs re-allege and incorporate the preceding paragraphs as if fully set forth herein.

229. Plaintiffs bring this action on behalf of themselves and the Proposed Nationwide Class against all Defendants. In the alternative, each Plaintiff brings this action on behalf of the Sub-Class corresponding to their home state, under the implied warranty law of their home state.[10]

230. Defendants are merchants in the sale of the Class Refrigerators to Plaintiffs and Class members and the Class Refrigerators are goods under applicable law.

231. To the extent necessary, Plaintiffs and Class members are in privity with Defendants in that they purchased their Refrigerators directly from Defendants, or from an actual or apparent agent of Defendants.

---

[10] In Ohio, the applicable implied warranty law includes tortious breach of warranty.

232.    To the extent necessary, Plaintiffs and Class members are also in privity with the Defendants by virtue of the contractual relationship stemming from Defendants' manufacturer's warranty provided in conjunction with the purchase of the Class Refrigerators, and which is enforceable by Plaintiffs and the Class as against the Defendants regardless of where, or from whom, the Class Refrigerators were acquired.

233.    At all times relevant hereto, there was a duty imposed by law which requires that the Class Refrigerators be reasonably fit for the purposes for which Class Refrigerators are used, that they are of fair average quality within their description, and that they be acceptable in trade for their description.

234.    Defendants have not validly disclaimed, excluded, or modified the implied warranties and/or duties described herein, and/or any attempted disclaimer, exclusion of the same was and is ineffectual.

235.    Notwithstanding the aforementioned duty, at the time of delivery, the Class Refrigerators sold to Plaintiffs and Proposed Class members were not merchantable, and not fit for the ordinary purposes for which they were sold.

236.    As documented in their own business records and elsewhere, Defendants were notified that the Class Refrigerators were not merchantable within a reasonable amount of time after the latent defect manifested itself to Plaintiffs and Proposed Class members.

237.    As a result of the non-merchantability of the Class Refrigerators described herein, Plaintiffs and other members of the Class have sustained damages in an amount to be determined at trial.

238.    The Class Refrigerators are "consumer products," as that term is defined by 15 U.S.C. §2301(1).

3072935.8

239. Plaintiffs and Proposed Nationwide Class members are "consumers," as that term is defined by 15 U.S.C. § 2301(3).

240. Defendants are "warrantors" and "suppliers," as those terms are defined by 15 U.S.C. § 2301(4) and (5).

241. Defendants provided Plaintiffs and Proposed Nationwide Class members with "implied warranties," as that term is defined by 15 U.S.C. § 2301(7).

242. In their capacity as warrantors and by the conduct described herein, any attempt by Defendants to limit the implied warranties in a manner that would exclude coverage of the defective Class Refrigerators is unconscionable and any such effort to disclaim, or otherwise limit, liability for the defective Class Refrigerators is void.

243. All jurisdictional prerequisites have been satisfied herein.

244. The defective linear compressor is a result of the Class Refrigerators' design and is not the product of any manufacturing flaw or alteration in the Class Refrigerators after they were manufactured. In other words, the defective linear compressor existed at the point of design, manufacture, distribution, and sale.

245. A warranty that the Class Refrigerators were in merchantable condition and fit for the ordinary purpose for which refrigerators are used is implied by law under the Uniform Commercial Code (*e.g.*, 810 ILCS 5/2-314). This implied warranty of merchantability is part of the basis for the bargain between Transform SR Brands (including as the assignee of Sears' liabilities), on the one hand, and Plaintiffs and Proposed Class members, on the other.

246. Transform SR contracted with LG Korea and/or LG USA for Defendants' collective benefit to design and to manufacture the Class Refrigerators, including the linear compressors contained therein. Upon information and belief, LG Korea and/or LG USA entered

that contract knowing and intending that Transform SR would distribute, market, advertise, and sell the Class Refrigerators.

247.    Notwithstanding the aforementioned duty, at the time of delivery, Defendants breached the implied warranty of merchantability because the Class Refrigerators are not fit for the ordinary purposes for which such goods are used and fail to conform to the standard performance of like products used in the trade. This is so for the reasons stated above, including that the Refrigerators do not consistently maintain an appropriate temperature when operated as Defendants instructed and intended at the time Plaintiffs and Proposed Nationwide Class members purchased the Refrigerators, for the industry standard lifetime of at least 10 years.

248.    Defendants knew or should have known that Class Refrigerators posed a safety risk and were defective as designed and knew or should have known that selling the Class Refrigerators to Plaintiffs and Proposed Nationwide Class members as marketed constituted a breach of the implied warranty of merchantability.

249.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Proposed Class members bought the Refrigerators without knowledge of the defective linear compressor or its safety risks.

250.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Proposed Class members purchased unsafe products which could not be used for their intended purpose of safely storing food in a residential setting.

251.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and Proposed Class members have suffered damages and did not receive the benefit of their bargain.

252.    Defendants' breach of implied warranties violates the provisions of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq*.

253.     The breaches of the implied warranty of merchantability damaged Plaintiffs and the Proposed Nationwide Class in an amount to be proven at trial. Among other things, the market price of the product that Plaintiffs and the Proposed Nationwide Class members actually paid for (*i.e.*, machines that could be used safely to store food) is higher than the market price of the product that Defendants provided (*i.e.*, machines that cannot maintain an appropriate temperature). Additionally, Plaintiffs and Proposed Class members are entitled to revoke their acceptance of the Class Refrigerators, obtain damages and equitable relief, and obtain attorney's fees and costs pursuant to 15 U.S.C. § 2310.

254.     Plaintiffs and Proposed Class members are also entitled to damages under 810 ILCS 5/2-714.

### THIRD CAUSE OF ACTION
**VIOLATION OF SONG BEVERLY CONSUMER WARRANTY ACT,
BREACH OF IMPLIED WARRANTY
Cal. Civ. Code § 1790, *et seq.*
*Asserted in the alternative that Illinois law does not apply to California Sub-Class members*
Against all Defendants**

255.     Plaintiff Edwards re-alleges and incorporates the preceding paragraphs as if fully set forth herein.

256.     Plaintiff Edwards brings this action on behalf of herself and the Proposed California Sub-Class against all Defendants.

257.     The Class Refrigerators are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

258.     Defendants are "manufacturers" within the meaning of Cal. Civ. Code § 1791(j).

259.     Plaintiff Edwards and Proposed California Sub-Class members are "buyers" within the meaning of Cal. Civ. Code. § 1791(b).

3072935.8

260. By operation of law, every Class Refrigerator sold within California included an implied warranty that the goods are merchantable. Cal. Civ. Code. § 1792.

261. The defective linear compressor is latent and was present at the time of the sale, and therefore the Class Refrigerators were not merchantable at the time of the sale. Defendants thus breached implied warranties by selling Class Refrigerators that were not fit for ordinary use and that were not of merchantable quality.

262. Had Plaintiff Edwards and the Proposed California Sub-Class members known about the defective linear compressor at the time of sale, they would not have bought the Class Refrigerators, or they would have purchased the Class Refrigerators at a lower price.

263. As a direct and proximate result of the breach of its implied warranties by Defendants, Plaintiff Edwards and the Proposed California Sub-Class members have been damaged in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**Violation of State Consumer Protection and Unfair Trade Practices Laws**
**Against all Defendants**

264. Plaintiffs re-allege and incorporate by reference all preceding allegations as if fully set forth herein.

265. Plaintiffs bring this action on behalf of themselves and the Proposed Nationwide Class against all Defendants under Illinois law. In the alternative, each Plaintiff brings this action on behalf of the Sub-Class corresponding to their home state, under State Consumer Protection and Unfair Trade Practices Laws of their home state. The applicable state statutes are identified later in this cause of action.

266. Defendants have engaged in unfair, unlawful, and fraudulent business practices by: (1) marketing and selling Class Refrigerators that fail during normal use and/or have a

substantial risk of failure during normal use; and (2) intentionally failing to disclose and/or concealing known defects and risks.

267.     Defendants intentionally concealed and/or failed to disclose that the Class Refrigerators were defective for the purpose of inducing Plaintiffs and Proposed Class members to purchase the Class Refrigerators.

268.     The facts concealed and/or not disclosed by Defendants to Plaintiffs and other Proposed Class members are material facts in that a reasonable person would have considered them important in deciding whether or not to purchase (or to pay the same price for) the Class Refrigerators.

269.     Plaintiffs and Proposed Class members justifiably acted or relied to their detriment upon the concealment and/or non-disclosed facts as evidenced by their purchase of the defective Class Refrigerators.

270.     Had Plaintiffs and other Proposed Class members known that the Class Refrigerators were defective, they would not have purchased the Class Refrigerators, or would have paid less for them.

271.     By engaging in the above-described acts and practices, Defendants have committed one or more acts of unfair competition.

272.     Defendants' acts and practices have deceived and/or are likely to deceive members of the consuming public and Proposed Class members.

273.     Defendants knowingly manufactured, marketed, and sold Plaintiffs and other Proposed Class members Class Refrigerators with defects that have rendered them unusable for the purposes for which they were sold.

274.     The injury to consumers by this conduct greatly outweighs any alleged countervailing benefit to consumers under all of the circumstances. Moreover, in light of

Defendants' exclusive knowledge of the defects, the injury is not one that Plaintiffs or other Proposed Class members could have reasonably avoided.

275.    Defendants' acts and practices are unlawful because they violate Cal. Code §§ l668, 1709, 1750, 1710, 17200, and 17500, *et seq*., the common law duties of good faith and fair dealing, the common law of fraud by omission, and the commercial, consumer protection, and unfair competition laws of various states, including, *inter alia*, New York General Business Law (§ 349, *et seq.* and § 350, *et seq.*), the Illinois Consumer Fraud and Deceptive Practices Act (815 Ill. Comp. Stat. § 50 5/2), Massachusetts Consumer Protection Law (Mass. Gen. Laws Ann. ch. 93, § 1, *et seq.*), Florida's Deceptive and Unfair Trade Practices Act (F.S.A. § 501.201 *et seq.*), Ohio's Consumer Sales Practices Act (Ohio Rev. Code § 1345.01 *et seq.*), Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 Pa.C.S.A. §§ 201-1 *et seq.*), Washington's Unfair Business Practices Act (Rev. Code §19.86 *et seq.*), and the Texas Deceptive Trade Practices - Consumer Protection Act, (Tex. Bus. & Com. Code §17.41 *et seq.*).

276.    By this Count Plaintiffs plead violations of all of the foregoing statutory and common laws. Among other things:

a.    Defendants had an ongoing duty to Plaintiffs and Proposed Class members to refrain from unfair or deceptive practices in the course of its business. Specifically, Defendants owed Plaintiffs and Proposed Class members a duty to disclose all the material facts concerning the linear compressor in the Class Refrigerators because they possessed exclusive knowledge, intentionally concealed the defect from Plaintiffs and Proposed Class members, and/or it made misrepresentations that were misleading because they were contradicted by withheld facts.

b.    Defendants' violations present a continuing risk to Plaintiffs and Proposed Class members, as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

c.    Plaintiffs and Proposed Class members suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' misrepresentations and concealment of and failure to disclose material information.

d.    Defendants are on notice of the issues raised in this Count and this Complaint by way of numerous consumer complaints, several prior consumer lawsuits, Plaintiffs' warranty claims, and, where necessary, letters specifically asserting statutory rights under the above statutes.

e.    Defendants caused to be made or disseminated, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers. The misrepresentations and omissions regarding the reliability and functionality of Class Refrigerators as set forth in this Complaint were material and likely to deceive a reasonable consumer.

277.    Plaintiffs and Proposed Class members seek all just and proper remedies, including but not limited to treble damages under the statutes that permit them, an order enjoining Defendants' deceptive and unfair conduct, court costs and reasonable attorneys' fees, and any other just and proper relief available.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment**
**Against all Defendants**

278.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this Complaint as though set forth fully herein.

3072935.8

279.     This claim is asserted in the alternative on behalf of Plaintiffs and the members of the Nationwide Class and/or the State Classes, to the extent that the warranties do not govern all of Plaintiffs' and Proposed Class members' claims or there is any determination that Plaintiffs do not have standing to assert any contractual claims asserted against Defendants because of any alleged absence of contractual privity or otherwise.

280.     Plaintiffs and the members of the Classes conferred a benefit on Defendants, of which benefit Defendants had knowledge. By their wrongful acts and omissions described herein, including selling the Refrigerators, Defendants were unjustly enriched at the expense of Plaintiffs and Proposed Class members.

281.     Plaintiffs' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

282.     It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as described herein in connection with selling the Class Refrigerators.

283.     Plaintiffs and the members of the Classes seek restitution from Defendants and an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct and establishment of a constructive trust from which Plaintiffs and Proposed Class members may seek restitution.

## SIXTH CAUSE OF ACTION
### Negligent Design and Failure to Warn
### Against all Defendants

284.     Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth herein.

285.     Plaintiffs assert this cause of action on behalf of the Nationwide Class and/or the State Classes.

286. Defendants knew—or by the exercise of reasonable care should have known—that the Class Refrigerators would have and had the alleged design defects.

287. Defendants knew that Plaintiffs and the other members of the Class—who used the Class Refrigerators for their intended use—were members of a foreseeable class of persons who were and are at risk of suffering serious inconvenience and expense solely because of the alleged defects described above.

288. At the time Defendants manufactured, distributed, and/or sold the Class Refrigerators, they owed a non-delegable duty to persons like Plaintiffs and the other members of the Class to exercise ordinary and reasonable care to properly design the Refrigerators, and they owe a continuing duty to warn about the problem and to repair and/or recall all defective Class Refrigerators.

289. Defendants had a pre-sale duty to warn potential purchasers that the Class Refrigerators carried greater risks of failure to control temperature than an ordinary consumer would expect when using the Class Refrigerators for their intended purpose and in a reasonably foreseeable manner.

290. Defendants failed to use appropriate design, engineering, and parts in manufacturing the Class Refrigerators, and in other respects, Defendants breached their duties by being wantonly reckless, careless, and negligent.

291. As a direct and proximate result of Defendants' wanton recklessness, carelessness, and negligence, Plaintiffs and the other members of the Proposed Class suffered damages and losses—and Plaintiffs and the other members of the Proposed Class have spent and will have to spend money to repair and/or replace the Class Refrigerators.

179. Plaintiffs and the other members of the Proposed Class have not committed any contributory negligence.

* * *

WHEREFORE, Plaintiffs individually and on behalf of the above defined Classes, by and through counsel, pray the Court grant the following relief:

A.      An Order certifying this action as a class action pursuant to Rule 23(b)(3) and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure;

B.      An Order appointing Plaintiffs as representatives for the Classes and appointing their counsel as lead counsel for the Classes;

C.      An order awarding Plaintiffs and all other Class members damages in an amount to be determined at trial for the wrongful acts of Defendants and its predecessor described herein;

D.      Restitution as authorized by law;

E.      Payment of any economic, direct, actual, general, incidental, and consequential damages, in an amount to be proven at trial;

F.      Payment to the Classes of all damages associated with the replacement of the defective products and parts, in an amount to be proven at trial;

G.      Payment to the Classes of punitive damages, in an amount to be proven at trial;

H.      An order awarding attorney's fees pursuant to applicable State and common laws;

I.      Nominal damages when available;

J.      Interest as provided by law, including but not limited to pre judgment and post-judgment interest as provided by rule or statute; and

K.      Any and all other and further relief as this Court deems just, equitable, or proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all counts so triable.

Dated: October 4, 2024

Respectfully submitted,

By: */s/ Jason L. Lichtman*

Jason L. Lichtman (IL Bar No: 6290052)
Jonathan D. Selbin
John T. Nicolaou
Andrew R. Kaufman
Margaret Mattes Becko
**LIEFF CABRASER HEIMANN
& BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, New York 10013
212.355.9500
jlichtman@lchb.com
jselbin@lchb.com
jnicolaou@lchb.com
akaufman@lchb.com
mbecko@lchb.com

Joseph S. Tusa
(N.D. Ill. Bar No. 2717809)
**TUSA P.C.**
55000 Main Road, 2nd Floor
P.O. Box 566
Southold, NY 11971
Telephone 631.407.5100
joseph.tusapc@gmail.com

Gary Klinger (IL Bar No: 6303726)
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
866.252.0878
gklinger@milberg.com